Argued January 2, reversed July 3, 1968

SIMPSON TIMBER COMPANY, *Appellant,*
*v.* STATE TAX COMMISSION,
*Respondent.*
443 P. 2d 162

*Jack B. Schwartz,* Portland, argued the cause for appellant. With him on the briefs were Sabin, Dafoe & Newcomb, and Carmie R. Dafoe, Jr., Portland.

*Donald C. Seymour,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and John C. Mull, Assistant Attorney General, Salem.

Dean Ellis, Salem, William H. Hedlund, Frank H. Spears, and McColloch, Dezendorf & Spears, Portland, filed a brief as amici curiae.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

The plaintiff, Simpson Timber Company, appeals from a declaratory judgment of the Oregon Tax Court requiring it to pay additional corporate excise taxes. The following statement of the rather complicated background is taken largely from the opinion of the Oregon Tax Court. 2 OTR 509 (1967).

M & M Woodworking Company, an Oregon corporation, paid under protest to Multnomah county certain personal property assessments during its corporate excise tax periods which ended on February 28, 1955, March 3, 1956, and August 17, 1956. Those personal property taxes were used by M & M as an offset in computing its corporate excise taxes in accordance with ORS 317.085, then in effect.

The validity of the protested personal property taxes was then litigated and substantial refunds were received in 1959 for the tax period ending August 17, 1956, and in 1962 for the tax periods ending February 28, 1955, and March 3, 1956. The 1959 refund was made in compliance with the decision of this court in *M & M Woodworking Co. v. Tax Com.*, 217 Or 161, 180, 314 P2d 272, 275, 317 P2d 920, 925, 339 P2d 718 (1959).

On or about August 17, 1956, Simpson Redwood Company purchased the capital stock and assets of M & M, which was dissolved on May 1, 1957. As a part of the transaction Simpson Redwood assumed all liabilities of M & M existing on the closing date, "whether current, fixed, contingent or other."

On February 18, 1963, after the personal property tax refunds had been received, the defendant, State Tax Commission, informed Simpson Redwood that it owed additional corporate excise taxes because of the refund of the personal property taxes which had previously been used by M & M as an offset in computing its corporate excise taxes. The additional taxes claimed amounted to $444.65 for the period ending February 28, 1955, $20,825.43 for the period ending March 3, 1956, and $48,269.41 for the period ending August 17, 1956.

On May 6, 1963, the plaintiff, Simpson Timber Com-

pany, absorbed its wholly-owned subsidiary, Simpson Redwood.

The commission did not issue notices of deficiency assessments, but instead advised Simpson Timber that it intended to issue warrants (ORS 314.430), for the collection of the additional excise taxes. The commission refrained from issuing warrants only because plaintiff filed a bond satisfactory to the commission promising to bring a proceeding in a court of competent jurisdiction and procure a judgment declaring the rights of the parties. This proceeding was instituted pursuant to the bond.

Plaintiff contends that the commission is prevented from collecting the additional excise taxes by the three-year statute of limitations contained in ORS 314.410. M & M filed the returns involved in this proceeding in 1955, 1956 and 1957, and it is conceded that if the statute of limitations is applicable, the time allowed the commission to give notice of a proposed deficiency has expired, and that no notice of a proposed assessment has been given. We hold that the statute of limitations is controlling, and reverse.

■ Since the case turns on the construction of the 1959 amendments to ORS 314.405 and ORS 314.410, we will briefly review the history of those statutes.[1] Prior to 1957, a predecessor statute, ORS 317.410, provided in part as follows:

"(1) If the commission discovers from the audit of the return or otherwise that *any portion of the income* of any taxpayer has not been assessed, it may, at any time within three years after the return has been filed, compute the tax and give notice to

[1] The trial court properly decided that there is no merit in the commission's contention that the plaintiff did not exhaust its administrative remedies before filing this proceeding in the tax court. 2 OTR 509-511.

the taxpayer of the amount due, including penalty and interest thereon. * * *" [Emphasis added]

In 1957,[2] in a general revision of the statutes relating to taxes imposed upon or measured by net income, ORS 317.410 was repealed and there was enacted in lieu thereof ORS 314.410. In the 1957 revision the first sentence of ORS 317.410 as quoted above was changed to read as follows:

"(1) If the commission discovers from the audit of the return or otherwise that *the income of any taxpayer, or any portion thereof,* has not been assessed, it may, at any time within three years after the return was filed, compute the tax and give notice to the taxpayer of the amount due, including penalty and interest thereon. * * *" [Emphasis added]

No change in meaning was apparently intended by the slight change in the 1957 version of the above sentence.

In 1959 the legislature made a substantive change in ORS 314.410 and its companion statute ORS 314.405. The first sentence of ORS 314.410 was amended to read as follows:

"(1) At any time within three years after the return was filed, the commission may give notice of proposed assessment as prescribed in ORS 314.405."

The controlling amendment was made to ORS 314.405, the pertinent part of which was amended to read as follows:

"(1) As soon as practicable after the return is filed the commission shall audit it, if the commission deems such audit practicable. If the commission discovers from the audit of a return or otherwise

---

[2] Oregon Laws 1957, ch 632, § 14.

that *a deficiency exists,* it shall compute the tax and give notice to the taxpayer of its proposal to assess the deficiency, plus interest and penalty for fraud or negligence, if any attaches.  *  *  *" [Emphasis added]

In *Warm Sprgs. Lbr. Co. v. Tax Com.,* 217 Or 219, 342 P2d 143 (1959), we held that the three-year statute of limitations contained in the first sentence of ORS 317.410 as heretofore quoted, applied only if a *portion of the income* of a taxpayer had not been assessed. We held that if all of a taxpayer's income had been reported in his return and the deficiency involved only an improper credit, the limitation of the statute did not apply.[9]

The 1959 amendments to ORS 314.405 and ORS 314.410 were not made, however, as a result of our decision in *Warm Sprgs. Lbr. Co. v. Tax Com.,* supra, which was not handed down until July 15, 1959, after the 1959 legislature had adjourned. Whether the legislature knew of the pending litigation over the scope

---

[9] In Warm Sprgs. Lbr. Co. v. Tax Com., we said:

"It follows from these authorities that this case is not concerned with income that has not been assessed. No error in the amount of the tax is involved, for there is no charge that the income of the plaintiff was not correctly reported in its returns. In effect, the Commission found that credit for a payment upon a tax previously correctly determined had been erroneously claimed by the taxpayer and allowed by the Commission. It did nothing with regard to the income of the taxpayer or the amount of the tax. The three-year limitation on the Commission's action applies to a case where the Commission discovers 'that the income of any taxpayer, or any portion thereof, has not been assessed.' The Commission may, in that event, within three years after the return was filed 'compute the tax and give notice to the taxpayer of the amount due' etc. The Commission made no such discovery, nor did it compute the tax. It simply ascertained the balance due for failure of payment and notified the taxpayer of the deficiency. The statute does not apply to such a case, and there is no other statute imposing a limitation of time on the Commission's authority to collect the deficiency." 217 Or at 231-32.

of the statute of limitations as contained in ORS 317.410 and anticipated our decision, we do not know. The fact remains that the legislature changed a statute of limitations that applied only when "the income of any taxpayer or any portion thereof has not been assessed" to apply when the commission discovers by audit or otherwise "that a deficiency exists." No limitation is expressed or implied on the reason why the "deficiency exists."

■■ The tax court held that the 1959 amendments made no change in the statute of limitations, basing its decision on legislative history. We think, on the contrary, that the language of the amendments discloses a clear legislative intent to make the statute of limitations apply to all deficiencies coming to the attention of the commission by audit or otherwise. The legislature obviously intended (except for cases of fraud) to terminate the liability of the taxpayer unless he was notified by the commission of a deficiency assessment within three years of the filing of his return.[4]

In 1965 the legislature made its intent more specific by providing that the time limit of ORS 314.410 applied to deficiency assessments arising *inter alia* from improper personal property tax offsets.[5] The com-

---

[4] If there is inconsistency between the unambiguous words of the statutes and ambiguous statements made by an employee of the State Tax Commission during informal appearances before legislative committees, we must accept the wording of the statutes.

[5] ORS 314.405. "(8) Additional assessments and deficiency assessments with respect to any tax return shall be made pursuant to this section, and not otherwise, within the time limits prescribed by ORS 314.410, including but not limited to the assertion of additional tax arising from:
"*   *   *   *   *
"(d) Improper credits or offsets against the tax claimed in the return pursuant to ORS 316.455 (blind, old age and dependency), ORS 316.475 (taxes paid to another state or country), or ORS 317.070 (personal property tax offset)."

mittee on taxation of the House of Representatives, in which the 1965 amendment originated, took pains to record that the 1965 amendment to ORS 314.405 was not intended to indicate any interpretation of legislative intent concerning the statute as enacted in 1957 and subsequently amended.[6]

If ORS 314.405 and ORS 314.410 as amended in 1959 occasionally result in a windfall to a particular taxpayer, the legislature can take preventive action by appropriate amendments to the statutes. See ORS 316.475 (4).

■ The judgment of the tax court is reversed, and it is adjudged that the commission is barred by the limitations of ORS 314.410 from assessing any deficiency against the plaintiff for the tax periods involved herein on account of the personal property tax offsets taken by M & M in 1955, 1956 and 1957.

O'CONNELL, J., dissenting.

I dissent. The majority construe ORS 314.410 read together with ORS 314.405 (under the 1959 amendment) to mean that the three-year statute of limita-

---

[6] "It was the unanimous feeling of the committee, and the clerk was instructed to enter in the minutes with respect to House Bills 1704 [dealing with the personal property tax offset] and 1854, that the effective dates provided in the bills as amended are not intended to indicate any interpretation by the committee as to the legislative intent embodied in the 1957 amendments to ORS 317.070 or as to the legislative intent embodied in ORS 314.405 and 314.410 as enacted in 1957 and subsequently amended.

"The committee feels that any pending or prospective controversies concerning either the statute of limitations upon additional assessments or the application of the personal property tax offset to certain businesses, particularly as such controversies may arise out of the recent Supreme Court decision in the Guy F. Atkinson case, should be settled upon the ultimate legal interpretation of the statutory language as it existed for the tax years involved in such controversies. Such interpretation may or may not be in accordance with the revised language incorporated in House Bills 1704 and 1854 as amended."

tions will bar the state from recovering a corporate excise tax deficiency even though the state did not know and *could not have* discovered that a deficiency existed so as to give the required notice of a deficiency within the three-year period. I think that this is an erroneous construction of the statute.

I am willing to begin with the assumption that within the meaning of the statute the term "deficiency" includes an amount owing under the corporate excise tax because the taxpayer has taken a personal property tax offset and thereafter has received a credit or refund for an overpayment of that tax.[1] But the statute does not begin to run unless "a deficiency exists." There was no deficiency in the present case until the taxpayer had received its refund for overpayment of the personal property tax.

Moreover, when a deficiency exists the statute of limitations runs only "if the commission discovers from the audit of a return or otherwise" the existence of the deficiency. It was impossible for the commission to discover the deficiency in the present case until the personal property tax refund had been made to the taxpayer. Until that time there was only the possibility of a deficiency. The statute was not intended to run from the time the commission discovered only a *possible* deficiency based upon a *possible* refund. The statute itself makes this clear in providing that after discovering that a deficiency exists the commission "*shall compute the tax*" and then "give notice to the taxpayer of its proposal to assess the deficiency." The

[1] Tax Regulation 314.405 provides in part: "If the previous determination resulted in a credit or refund to the taxpayer, the deficiency upon the second determination is the excess of the correct amount of the tax over the tax reported by the taxpayer decreased by the credit or refund."

commission would not be able to "compute the tax" unless it knew the amount of the property tax refund.

The majority apparently finds a legislative intent to enact a statute of repose barring the state from collecting any deficiency no matter how it arises and even though it cannot be discovered by the state until after the statute has run. There is nothing in the wording of the statute nor in its legislative history indicating that the legislature so intended. Quite to the contrary, the legislative history shows that the 1959 amendment was introduced by the Tax Commission as a "housekeeping" amendment.

DENECKE and HOLMAN, JJ., join in this dissent.