No. 44 November 13, 2015 169

IN THE SUPREME COURT OF THE
STATE OF OREGON

Marlin "Mike" E. HILLENGA
and Sheri C. Hillenga,
*Respondents,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Appellant.*

(TC-RD 5086; SC S062603)

En Banc

On appeal from the Oregon Tax Court.*

Henry C. Breithaupt, Judge.

Submitted on the record July 21, 2015.

Darren Weirnick, Assistant Attorney General, Salem, filed the briefs for appellant. With him on the briefs was Ellen F. Rosenblum, Attorney General.

Marlin "Mike" E. Hillenga and Sheri C. Hillenga, appearing *pro se*, filed the brief for respondents.

LINDER, J.

The judgment of the Tax Court is affirmed in part and reversed in part, and the case is remanded to the Tax Court for further proceedings.

_____
  *  21 OTR 396 (2014).

**LINDER, J.**

This is a direct appeal from a decision of the Tax Court's Regular Division. For the 2006 tax year, taxpayers Mike and Sheri Hillenga claimed, among other things, a deduction based on a net operating loss carryover from their 2004 tax return. The Department of Revenue challenged the 2006 deduction, contending that taxpayers did not actually have a net operating loss in 2004 that could be applied against their 2006 taxes. The Tax Court held that the department could not challenge the 2004 deductions that resulted in the net operating loss carryover, because the 2004 tax year was closed by the statute of limitations. *Hillenga v. Dept. of Rev.*, 21 OTR 396, 419-21 (2014). The department appealed. On appeal, we agree with the department: By attempting to carry over their 2004 net operating loss to apply against their 2006 tax liability, taxpayers put the validity of their 2004 net operating loss at issue. Because the department was not trying to assess a deficiency (*i.e.*, additional taxes owed) for 2004, the statute of limitations did not apply. We remand for the Tax Court to consider the evidence.[1]

BACKGROUND AND PROCEDURAL FACTS

We begin by discussing what a net operating loss is and how it affects a taxpayer's liability in current and other tax years, which provides useful context to understand the procedural background and the legal issue in this case. The Internal Revenue Code and the Oregon Tax Code allow taxpayers to claim a deduction for net operating losses. *See* IRC § 172(a) ("There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year."); *former* ORS

---

[1] As a preliminary matter, we note that we discuss only a narrow range of facts, because only a single issue is before us. The Tax Court's opinion in this case ruled on a large number of disputed issues arising from taxpayers' 2006 returns. In their respondent's brief in this court, taxpayers take issue with several of those other rulings and urge that they justify reversal of the Tax Court here. Those other rulings, however, are not properly before us. Taxpayers did not file a cross-appeal, and so we cannot modify those parts of the Tax Court's decision on appeal. *See U.S. Bancorp v. Dept. of Rev.*, 337 Or 625, 642 n 10, 103 P3d 85 (2004), *cert den*, 546 US 813 (2005) (generally, party must cross-appeal to obtain modification of Tax Court's judgment).

316.014(1) (2005), *renumbered as* ORS 316.028(1) (for purposes of state taxation, net operating losses and net operating loss carryovers are treated the same as in the Internal Revenue Code). The term "net operating loss," in simple terms, describes the situation when a taxpayer has more deductions than he or she has gross income. IRC § 172(c) ("For purposes of this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income."). To the extent that those deductions exceed gross income in a current tax year, the taxpayer gets no tax benefit from them—the taxpayer has no income to offset for tax purposes. A net operating loss can, however, be used to offset taxable income in other taxable years, either by being carried forward to a future tax year or carried back to an earlier year. *See* IRC § 172(b)(1)(A), (2); Michael L. Schultz, *Section 382 and the Pursuit of Neutrality in the Treatment of Net Operating Loss Carryovers*, 39 U Kan L Rev 59, 59 (1990).[2]

The purpose behind a net operating loss carryover or carryback is to address an inequity that can arise from taxing taxpayers on an annual basis. Annual taxes unfairly burden a taxpayer whose business generates profits in some years and losses in others; such a taxpayer would pay more in taxes than a taxpayer who earned the same amount of income on a stable basis. *See Christian v. Dept. of Rev.*, 269 Or 469, 471, 526 P2d 538 (1974) (so noting); *State Farming Co. v. Commissioner*, 40 TC 774, 782 (1963) (same; discussing and quoting federal legislative history); Schultz, 39 U Kan L Rev at 59 (same).[3] The net operating loss carryover

---

[2] Strictly speaking, a "carryover" and a "carryforward" mean the same thing: a deduction or credit carried from one tax year into a later tax year. *See West's Tax Law Dictionary* 148-49 (2015) (definitions of "carryover" and "carryforward"). A "carryback" is a deduction or credit carried from one tax year into a prior tax year. *Id.* at 148.

[3] Schultz offers the following example:

"Assume, for example, that over a three-year period, business *A* has earnings of $200 in year one, earnings of $400 in year two, and a loss of $300 in year three, while business *B* has earnings of $100 each year. Each business thus earns $300 over the three-year period. Assuming a 34% tax rate, under a strict application of the annual accounting principle, business *A* would pay tax of $204, and the loss in year three would simply be ignored. Business *B*, in contrast, would pay only $102 of tax."

39 U Kan L Rev at 59 (footnotes omitted).

allows the taxpayer with irregular income to carry a loss from one year to another year that was profitable. *Schultz,* 39 U Kan L Rev at 59. The net operating loss carryover thus helps such a taxpayer average out the irregular income over time, at least for tax purposes. *Libson Shops, Inc. v. Koehler*, 353 US 382, 386, 77 S Ct 990, 993, 1 L Ed 2d 924, *reh'g den*, 354 US 943 (1957) (net operating loss carryovers and carrybacks "were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year" (footnote omitted)).

In this case, taxpayers claimed several business deductions in their 2004 tax return. Those deductions, when otherwise factored into their income, caused them to claim a net operating loss of $11,714. Three years later, the 2004 tax year became "closed" by the relevant statute of limitations. *See* ORS 314.410(1) ("At any time within three years after the return was filed, the Department of Revenue may give notice of deficiency as prescribed in ORS 305.265.").

Beginning in 2009, the department commenced an audit of taxpayers' 2006 tax return. That audit culminated in a notice of deficiency for that tax year, 2006—a notice that taxpayers owed additional unpaid taxes. It is undisputed that the notice of deficiency was given while the 2006 return was "open": that is, the department gave notice of the deficiency within the three-year statute of limitations in ORS 314.410(1) as it applied to the 2006 return. It also is undisputed that that notice of deficiency issued after the 2004 tax year had closed. In seeking the deficiency as to the 2006 return, the department disallowed many of taxpayers' deductions and assessed a deficiency. Taxpayers challenged that deficiency assessment in the Tax Court. The Tax Court agreed with the department in many respects, disallowing many of the claimed deductions because taxpayers had not adequately documented them. *See, e.g.*, 21 OTR at 412-13 (taxpayers did not substantiate business-expense deduction for vehicles); *id*. at 413-14 (taxpayers did not substantiate business-expense deductions for depreciation of vehicles and computers); *id*. at 414 (taxpayers did not substantiate business-expense deductions for insurance premiums); *id*. at 415 (taxpayers did not substantiate business-expense

deductions for business supplies); *id.* at 416 (taxpayers did not substantiate business-expense deductions for meals and entertainment expenses).

As to the deduction for net operating loss carryover from 2004, however, the Tax Court ruled against the department. In their 2006 tax return, taxpayers had sought to apply $9,547 of the 2004 net operating loss against their 2006 taxable income. When taxpayers appealed to the Tax Court, the department asserted by counterclaim that taxpayers were not entitled to apply that net operating loss to their 2006 tax liability. More specifically, the department maintained that taxpayers' 2004 tax return had claimed more than $9,547 in deductions that were not allowable, because taxpayers could not substantiate them. During discovery in this case, taxpayers did not produce any records to substantiate those claimed deductions from 2004. Accordingly, the department argued, taxpayers' 2004 deductions did not generate any net operating loss that could be carried over to the 2006 tax year.

In rejecting the department's argument, the Tax Court held that the three-year statute of limitations under ORS 314.410(1) prohibited the department from contesting any aspect of the 2004 tax return. "If the department questioned the accuracy of taxpayers' 2004 return, the time to raise those questions was within the limits set by ORS 314.410." 21 OTR at 420.

The department sought reconsideration. It argued that it was not seeking any deficiency for 2004, so the statute of limitations did not apply. Rather, the department emphasized, it was challenging taxpayers' 2006 return only, and specifically taxpayers' 2006 claim for a net operating loss carryover. It noted that federal cases, as well as the Tax Court itself, had concluded that both taxpayers and taxing authorities alike could recalculate taxes for closed years when that recalculation affected a carryover to an open year. The Tax Court denied reconsideration without discussion.

## ANALYSIS

Against that procedural backdrop, we turn to the legal issue presented by the department's appeal. There is

no doubt that taxpayers' 2006 tax liability depends in part on the validity of their 2004 tax calculations that showed a net operating loss. The issue is whether the statute of limitations of ORS 314.410(1) has cut off the department's ability to now challenge those 2004 calculations for the limited purpose of determining taxpayers' 2006 tax liability.

The department has no general authority to take issue with every deduction claimed by a taxpayer on a particular tax year's return. Rather, that authority arises only if the deduction affects the amount of tax owed by a taxpayer for a given tax year. Specifically, after a taxpayer files a tax return for a given year, the department is charged with examining the return as soon as practicable, computing the tax owed for the period covered by the return, and notifying the taxpayer if the department discovers a "deficiency." ORS 305.265(2).[4] A deficiency, for that purpose, basically means

_____

[4] ORS 305.265 provides in part:

"* * * * *

"(2) * * * If the department discovers from an examination or an audit of a report or return or otherwise that a deficiency exists, it shall compute the tax and give notice to the person filing the return of the deficiency and of the department's intention to assess the deficiency, plus interest and any appropriate penalty. * * *

"(3) When the notice of deficiency described in subsection (2) of this section results from the correction of a mathematical or clerical error and states what would have been the correct tax but for the mathematical or clerical error, such notice need state only the reason for each adjustment to the report or return.

"(4) With respect to any tax return filed under ORS chapter 314, 316, 317 or 318, deficiencies shall include but not be limited to the assertion of additional tax arising from:

"(a) The failure to report properly items or amounts of income subject to or which are the measure of the tax;

"(b) The deduction of items or amounts not permitted by law;

"(c) Mathematical errors in the return or the amount of tax shown due in the records of the department; or

"(d) Improper credits or offsets against the tax claimed in the return.

"(5)(a) * * *

"(b) Within 30 days from the date of the notice of deficiency, the person given notice shall pay the deficiency with interest computed to the date of payment and any penalty proposed. Or within that time the person shall advise the department in writing of objections to the deficiency, and may request a conference with the department * * *.

"* * * * *

taxes owed but unpaid. OAR 150-305.265(2)-(A) (defining "deficiency" as "the amount by which the tax as correctly computed exceeds the tax, if any, reported by the taxpayer"); *see also Renville v. Dept. of Rev.*, 5 OTR 202, 206-07 (1973) (relying on federal definitions to support conclusion that "deficiency" means "an amount of tax due" (emphasis, internal quotation marks, and citation omitted)).

For the department to issue a notice of deficiency, there must be some tax owed. Accordingly, there can be no deficiency if the taxpayer has no taxable income. That point becomes significant when one considers that the taxpayer's taxable income may be less than zero, as is true when the taxpayer has a net operating loss. If a taxpayer incorrectly claims deductions leading to a net operating loss of $400,000, but the department concludes that the taxpayer's actual net operating loss was only $40,000, the department has no ability to issue a deficiency. Whether the true loss is $40,000 or $400,000, it is still a loss, the taxpayer still owes no taxes, and the department cannot issue a deficiency.

If the department does issue a notice of deficiency, the taxpayer has 30 days from the date of notice of the deficiency to pay the deficiency with interest and any proposed penalty, or to pursue remedies to challenge the assessed deficiency, including taking an appeal to the Tax Court. *See generally* ORS 305.265(5)(b) (setting time for payment); ORS 305.265(7)-(15) (describing administrative remedies and right to appeal to Tax Court).

When a taxpayer does appeal the assessment of a deficiency, ORS 305.575 gives the Tax Court jurisdiction to determine the correct amount of that deficiency on grounds different from or other than those asserted by the department, and in an amount either less than or greater than the deficiency assessed by the department. In particular, ORS 305.575 provides in part:

"(7) If neither payment nor written objection to the deficiency is received by the department within 30 days after the notice of deficiency has been mailed, the department shall assess the deficiency, plus interest and penalties, if any, and shall send the person a notice of assessment, stating the amount so assessed, and interest and penalties. ***"

"In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department, provided that claim for such additional tax on other or different grounds is asserted by the department before or at the hearing or any rehearing of the case before the tax court."

In this case, the department relied on ORS 305.575 to urge that the Tax Court had jurisdiction to determine the correct amount of taxpayers' 2006 deficiency, which in turn authorized the Tax Court to examine the 2004 net operating loss carryover that taxpayers used in calculating their 2006 tax liability. The Tax Court, however, concluded that ORS 314.410(1) barred it from doing so. That statute states:

"At any time within three years after the return was filed, the [department] may give notice of deficiency as prescribed in ORS 305.265."[5]

The Tax Court held that the three-year statute of limitations under ORS 314.410(1) prohibited the department from contesting any aspect of the 2004 tax return. The Tax Court reasoned: "If the department questioned the accuracy of taxpayers' 2004 return, the time to raise those questions was within the limits set by ORS 314.410." 21 OTR at 420. The Tax Court agreed with the department that ORS 305.575 allowed it to calculate the correct amount of taxes regardless of the arguments made by the parties, but it held that that statute "does not declare open season to revisit closed tax years that are not at issue in the present appeal." 21 OTR at 421.

There is a textual disconnect between the Tax Court's conclusion and the statute on which it relied. ORS 314.410(1) is specific: It prohibits the department from giving notice of "deficiency as prescribed in ORS 305.265" after three years. As already described, a deficiency under ORS 305.265 is an assessment of owed but unpaid taxes

_____

[5] Other sections of ORS 314.410 provide for certain exceptions, none of which is relevant here. *See generally* ORS 314.410(2)-(4) (listing exceptions).

for a particular tax return period. Consistently with that limited meaning of "deficiency," this court has explained that the legislative intent behind ORS 314.410 was "to terminate the *liability* of the taxpayer unless he was notified by the [department] of a deficiency assessment within three years of the filing of his return." *Simpson Timber Co. v. Tax Commission*, 250 Or 434, 440, 443 P2d 162 (1968) (footnote omitted; emphasis added); *see generally Evans v. Finley*, 166 Or 227, 233, 111 P2d 833 (1941) ("Statutes of limitation affect only the remedy, and do not extinguish the right.").

The department here did not assert that taxpayers *owed* any taxes for 2004, or otherwise seek to recover a deficiency for that year. The department questioned only how much *loss* taxpayers had correctly claimed in that year, if any, and it did so only for the purpose of determining if taxpayers could use that loss to offset income on their 2006 tax returns. For the department to challenge the accuracy of the loss that taxpayers claimed in 2004 as it bears on taxpayers' 2006 tax liability is not to seek to recover a deficiency or to issue a notice of deficiency for the 2004 tax year. The Tax Court stretched a specific statute of limitations—no notices of deficiency after the three-year period—into a broader and more general prohibition against any review of the contents of a tax return that is older than three years. By its plain text, ORS 314.410(1) contains no such prohibition, and the Tax Court identified no text, context, or legislative history to support that expansion. *See generally State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (statutory interpretation requires consideration of text, context, and legislative history).

Context confirms our conclusion. ORS 305.265 sets out how the department gives notice of a deficiency, while ORS 314.410(1) gives the department three years to do so. Our construction recognizes that the two statutes operate in parallel. The Tax Court's construction, by contrast, breaks that parallel. While ORS 305.265 still is directed to the circumstances in which the department may issue a deficiency, ORS 314.410(1), as interpreted by the Tax Court, would impose a three-year statute of limitations, not just on the department issuing a deficiency notice under ORS 305.265,

but also on the department taking actions beyond issuing a deficiency notice. As we have already noted, even if the department knows that a taxpayer has grossly overstated its net operating loss, it may be unable to seek a deficiency because the taxpayer did, in fact, have some net operating loss that year. It is not plausible that the legislature intended to foreclose the department from acting after a particular period when the legislature gave the department no authority to act within that period.

        In arguing that the Tax Court erred, the department also relies on federal authority, claiming that the legislature has made federal law binding on this issue. *See* ORS 316.048 (generally, taxable income is as defined by federal law);[6] ORS 316.032(2) (directing department to "apply and follow the administrative and judicial interpretations of the federal income tax law");[7] *former* ORS 316.014(1) (2005), *renumbered as* ORS 316.028(1) (specifically directing that net operating loss and net operating loss carryovers "shall be the same as that contained in the Internal Revenue Code").[8] We need not decide whether we are directly bound by the federal cases on the statute of limitations question that this case presents. Even if the federal cases are not binding, their reasoning is persuasive.

---

[6] ORS 316.048 provides in part:

"The entire taxable income of a resident of this state is the federal taxable income of the resident as defined in the laws of the United States, with the modifications, additions and subtractions provided in this chapter and other laws of this state applicable to personal income taxation."

[7] ORS 316.032(2) provides:

"Insofar as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law. When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved. Nothing contained in this section limits the right or duty of the department to audit the return of any taxpayer or to determine any fact relating to the tax liability of any taxpayer."

[8] *Former* ORS 316.014(1) (2005) provides:

"In the computation of state taxable income the net operating loss, net operating loss carryback and net operating loss carryforward shall be the same as that contained in the Internal Revenue Code as it applies to the tax year for which the return is filed and shall not be adjusted for any changes or modifications contained in this chapter or by the case law of this state."

Federal court cases have long concluded that the taxes in a closed year may be recalculated to determine the correct amount of a carryover that is available in an open year. Perhaps the most succinct explanation for the holdings in those cases is set out in *Phoenix Electronics v. United States*, 164 F Supp 614 (D Mass 1958). The facts of that case are similar to those here. In *Phoenix Electronics*, the taxpayer had reported a net operating loss in 1947, but that net operating loss was based on some deductions taken by the taxpayer that were, in fact, not authorized. The taxpayer later sought to recover allegedly overpaid taxes for 1949 and 1950, based in part on carrying forward the 1947 net operating loss to those years. The Commissioner of Internal Revenue sought to recalculate the taxpayer's 1947 tax liability solely to determine the correct amount of the carryover to 1949 and 1950.

The federal district court agreed that the Commissioner had authority to recalculate the 1947 liability for that limited purpose. In so holding, the court first noted that the text of the statute of limitations barred the Commissioner only from assessing or collecting taxes for 1947. The court reasoned that the Commissioner was not, in fact, trying to assess or collect any taxes for 1947; consequently, the statutory bar did not apply. *Id*. at 615.

The court rejected the taxpayer's argument that the spirit of the statute of limitations should apply, based on the taxpayer's interest in finality and in being able to dispose of its records. As the court explained, the taxpayer itself had placed the closed year in issue by relying on the carryover:

> "The taxpayer here was free to dispose of his records, and leave his financial position unscrutinized, unless it chose itself to make events in 1947 pertinent. After the three years there was nothing the government could initiate. * * * The taxpayer, in seeking affirmative relief in later years from a tax otherwise then due, itself brought up the question of its 1947 financial position, and then sought the additional advantage that the government must take its word for it."

*Id*.

The court added that generally a statute of limitations bars only a remedy; it does not bar the debt. *Id*. Thus, while the statute of limitations did prohibit any attempt to recover taxes for 1947, it "[did] not make a three-year-old return [an] indisputable verity for all purposes." *Id*. The statute barred the government from assessing taxes after three years, but that is not the same as saying that the government must accept a three-year-old tax return as true when a taxpayer later uses it. *Id*.

Finally, the court noted that the taxpayer's position had the potential to lock in overstated losses, no matter how obvious the error. If a taxpayer overstated its loss for a particular year, but nevertheless had *some* loss that year, the Commissioner could not assess a deficiency. *Id*. at 615-16. Once the three-year statute of limitations had expired, under the taxpayer's argument, the Commissioner could not do anything to recalculate the original losses. The Commissioner would, in short, have no remedy at all. *Id*. at 616.

In *Commissioner of Internal Revenue v. Van Bergh*, 209 F2d 23 (2d Cir 1954), a somewhat similar case, Judge Learned Hand explained that the net operating loss carryover functionally made two tax years into one, at least for purposes of calculating the carryover. The issue in that case was whether taxes for a closed year could be recalculated to offset a net operating loss that was being carried back to that year. The taxpayer sought to carry back the net operating loss from 1946 to 1945, which would have entitled the taxpayer to a refund for 1945. Although 1945 was a closed year, the Commissioner determined that the taxpayer had underpaid taxes in 1945. The Commissioner ultimately conceded that he could not seek a deficiency for 1945, but he argued that the 1945 taxes could be recalculated and the amounts used to offset the net operating loss carryback from 1946.

The court agreed with the Commissioner. It held that the net operating loss carryover effectively treats income from two different tax years as if it was earned in a single year, and the taxpayer should accordingly be in

the same position as if both the loss and the income had occurred in the same year:

> "The purpose of the 'carry-back,' or 'carry-over,' privilege is to allow a taxpayer some equivalent for the fact that he has not been able to reduce his tax by a loss, because he has had no income in that year against which to credit it; and the only practicable equivalent is by a fiction to treat the loss as a deduction from his income in an earlier, or a later, year. There are two possible ways in which this might be done: (1) to allow the loss as a deduction from the net income as returned in the earlier, or the later, year; (2) to recompute the whole income for the earlier, or later, year, using the loss as a credit. While there is nothing in the statute that expressly adopts the second method, we can see no reason to suppose that, when Congress decided to allow the loss to be treated as though it had in fact occurred in the earlier, or later, year, it did not mean it to be so treated for all purposes. If this is not true, it will result that the taxpayer will be put in a better position, when the loss occurs in a later, or an earlier, year, than when it occurs in the year when it is allowed as a deduction. That obviously cannot have been the intention."

209 F2d at 25; *see also State Farming Co.*, 40 TC at 782 (net operating loss carryover "was not intended * * * to place a taxpayer in a better position than he would have been had losses and subsequent income occurred in a single year").

The rule that the federal courts have announced is not one-sided; it does not favor only the taxing authority. In *Springfield Street Railway Co. v. United States*, 312 F2d 754 (Ct Cl 1963), the taxpayer sought to carry back a net operating loss from 1955 to 1953 and 1954. The taxpayer had failed to take an allowable deduction in 1953, a year that was closed by the statute of limitations. The question was whether the court could correctly calculate the taxpayer's taxes for 1953, or whether it had to rely on the figures shown on the return. If the court could recalculate the taxes, then less of the net operating loss would have been used in 1953, leaving more for the taxpayer to use in the open year of 1954.

The United States Court of Claims ruled in the taxpayer's favor, holding that the taxpayer's taxes for 1953 could be recalculated. After extensively reviewing *Van Bergh*,

*Phoenix Electronics*, and other cases, the court concluded that any party could recalculate taxes in a closed year when doing so would affect the tax burden in an open year:

> "If, in the instant case, the facts were reversed and the plaintiff had understated its reported 1953 taxable income, it is undisputable, according to the cases cited in this opinion, that the Government would be permitted to recompute the plaintiff's greater correct 1953 income. This would then increase the amount of plaintiff's 1955 carryback loss which would have to be applied against 1953 income. Consequently, the remaining carryback loss to be applied against 1954 income would be decreased and thereby result in a smaller refund. Therefore, we do not understand why recomputation of income for a closed year should only be allowed when it will benefit the Government, and not under similar circumstances when it will benefit the taxpayer."

*Id*. at 759.

Other federal cases have reached the same general conclusion: The correct tax burden for a closed year may be recalculated when, because of a carryover or carryback, doing so would affect the taxes due for an open year. *See, e.g.*, *Phoenix Coal Co. v. Commissioner of Internal Revenue*, 231 F2d 420, 421-22 (2d Cir 1956) (taxes for closed year could be recalculated when taxpayer sought refund based on net operating loss carried back to that year); *Mennuto v. Commissioner*, 56 TC 910, 923 (1971) (holding that "the Commissioner can recompute the amount of an unused investment credit carryover from a barred year (1966) in order to determine the tax due for an open year (1967)"); *State Farming Co.*, 40 TC at 783 (holding that "the Commissioner was not barred by the statute of limitations from redetermining the taxable income of State Farming for 1952 in order to compute the proper net operating loss carryover to 1955").

The reasoning of *Phoenix Electronics* and the other federal authorities that we have cited is sound and should apply here. Interpreting ORS 314.410 to prohibit the recalculation of a net operating loss in a closed year, even though it is being carried over to an open year, risks leaving the department with no remedy. *See* 164 F Supp at 615-16.

The underlying concept of a net operating loss carryover itself implies that the calculations that support the loss should be reviewable when it affects a taxpayer's tax liability for an open year. If the statute of limitations applied to the earlier tax year, the carryover itself would significantly benefit taxpayers with irregular incomes by giving them access to the statute of limitations—an advantage not held by those taxpayers whose profits and losses all occurred in the same year. That result would be inconsistent with the purpose of a net operating loss carryover, which is intended to equalize treatment between those two types of taxpayers. That result would also be inconsistent with the means by which a net operating loss carryover works, which is by treating the income from two separate years as if it had occurred in the same year. *See Christian*, 269 Or at 476 ("The general rule with regard to the availability of loss carryback and carryover is that the loss is to be treated as though it occurred in the year to which it is to be carried.").

The Tax Court here appears to have been concerned about finality. In that respect, we again agree with *Phoenix Electronics*: A taxpayer who seeks to apply a carryover from a closed year against the income from an open one actively puts the carryover from the closed year in issue. *See* 164 F Supp at 615. The taxpayer can avoid having the carryover scrutinized by not claiming the carryover in a later tax year. What the taxpayer cannot do is claim the carryover while precluding any review of its merit. We emphasize in that regard that claiming a net loss carryover from a closed tax year does not open that tax year for purposes of assessing a deficiency. The Tax Court may revisit the calculation of the carryover credit from the closed year only for the purpose of determining the tax liability for the open year.

The Tax Court itself had previously held that it could recalculate matters from a closed year that affect the tax liability in an open year. In *Intl. Health & Life Ins. Co. v. Dept. of Rev.*, 5 OTR 320 (1973), *aff'd on other grounds*, 269 Or 23, 523 P2d 223 (1974), the court accepted the department's argument that, although the 1964 return was closed under the statute of limitations, "the records [for 1964] are open to examination and to the necessary tax accounting required to develop mathematical calculations for the succeeding

year, 1965." *Id.* at 329 (citing, *inter alia*, *Springfield Street Railway*). More recently, the Magistrate Division of the Tax Court held that the department "may examine a closed year to adjust [the taxpayers'] depreciation deductions in open years." *Pearce v. Dept. of Rev.*, TC-MD 100892C, 2011 WL 5148599, \*4 (Or Tax M Div, Oct 31, 2011). This court did reverse a Tax Court opinion that had held (among other things) that "either the government or the taxpayer may recompute the tax for the closed year to affect a carryover item to open years." *Smurfit Newsprint Corp. v. Dept. of Rev.*, 14 OTR 434, 438 (1998). This court did not address that aspect of the Tax Court's holding, however; the reversal was on other grounds. *Smurfit Newsprint Corp. v. Dept. of Rev.*, 329 Or 591, 997 P2d 185 (2000).[9]

Accordingly, we reverse the decision of the Tax Court. In doing so, we address only the Tax Court's legal conclusion that the statute of limitations of ORS 314.410(1) barred that court from considering the amount of taxpayers'

---

[9] *Smurfit* had involved the carryover of a particular tax credit. The department sought to recalculate the taxpayer's taxes for 1986. While 1986 was closed by the statute of limitations under ORS 314.410, the correctly calculated taxes for that year would have been higher, and—the department argued—thus would have consumed more of the tax credit, leaving less to be carried forward and used in the open years of 1987 and 1988. *See* 14 OTR at 435-36. The Tax Court agreed with the department and granted summary judgment accordingly.

In reversing, this court did *not* address the Tax Court's conclusion that the department could recalculate taxes for a closed year when a carryover would affect the tax in open years. Instead, this court rejected only the department's assertion that the correctly calculated taxes for 1986 would have consumed more of this particular tax credit. *See* 329 Or at 597 (explaining that the court "address[ed] only the department's argument that it was authorized to reallocate taxpayer's use of its PCF [pollution control facility] tax credits in the 1986, 1987, and 1988 tax years," because "[t]he department's argument [incorrectly] assumes that \*\*\* *the department* is entitled to determine how much PCF tax credit a taxpayer must use in any given year" (emphasis in original)). This court explained that the relevant statute gave the taxpayer, not the department, the right to decide how much of that particular tax credit to apply to any particular tax year. *Id*. ("[t]he statute gives the taxpayer, not the department, authority to determine how a taxpayer will use its PCF tax credit"); *id*. at 598 ("the department is not authorized to determine how much PCF tax credit a taxpayer is entitled to use in any given year"). Thus, even if the taxpayer had in fact owed more in 1986 taxes, the department could not force the taxpayer to use the tax credit to offset that obligation.

In other words, *Smurfit* was about a taxpayer *using* a carryover in a closed year, and this court decided that case based only the particular statutory text for that particular carryover. This case involves the *creation* of a carryover in a closed year, when a taxpayer seeks to use it in an open one.

net operating loss in 2004. We do not decide whether taxpayers are in fact entitled to all, some, or none of the net operating loss that they claimed for 2004. For that purpose, we remand for the Tax Court.

The judgment of the Tax Court is affirmed in part and reversed in part, and the case is remanded to the Tax Court for further proceedings.