No. 1          February 5, 2020          1

IN THE OREGON TAX COURT
REGULAR DIVISION


Rami KHALAF (Khalaf Motors),
*Plaintiff*,

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5347)

At trial, taxpayer, as owner of a dune buggy export business, claimed deductions for various business expenses and an adjustment to his cost of goods sold (COGS). Taxpayer claimed a deduction for freight expenses under IRC section 162(a) and an adjustment for a supercharger as COGS. The court held that taxpayer satisfied his burden of proof by providing sufficient documentation to show these deductions were allowable by a preponderance of the evidence. Taxpayer also claimed deductions for travel expenses, but the court determined that these did not satisfy the higher documentation standard under IRC section 274(d). Finally, taxpayer claimed a dune buggy was a depreciable business asset, but the court held that his actions—keeping the mileage low and attempts to sell—showed that the dune buggy was held as a demonstrator. Therefore, the court held that taxpayer did not satisfy his burden of proof for the deduction of the travel expenses and the dune buggy.

Trial was held in the courtroom of the Oregon Tax Court on May 2, 2019.

Plaintiff Rami Khalaf argued the cause *pro se*.

James C. Strong, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue.

Decision for Defendant rendered February 5, 2020.

**ROBERT T. MANICKE, Judge.**

### I.   INTRODUCTION

This personal income tax matter is before the court after trial. The tax year at issue is 2013. Plaintiff Rami Khalaf (taxpayer) asserts that he is entitled to deductions for various business expenses and an adjustment to his cost of goods sold (COGS). Defendant Department of Revenue (the department) asserts that taxpayer is not entitled to these deductions nor is he entitled to an adjustment for COGS.

## II.  FACTS

During 2013, taxpayer operated a sole proprietorship under the assumed business name "Khalaf Motors." At trial, taxpayer described his business as "facilitating" sales between customers in the United Arab Emirates (UAE) and "suppliers" of various consumer goods located in the United States. According to taxpayer, a typical transaction would begin when a UAE customer contacted taxpayer, either by phone, email, or online messenger, with a request that taxpayer locate goods available for purchase from suppliers in the United States. Once taxpayer located the customer's desired item in the United States, taxpayer would negotiate the purchase price and logistics, including the cost of international shipping to the customer located in the UAE. Taxpayer would then arrange for the customer to wire the total cost, including taxpayer's fee, to taxpayer's domestic bank account. Upon receiving confirmation that the funds had been deposited in his account, taxpayer would secure the desired item and arrange shipping to the customer in the UAE. Taxpayer would then wire the purchase price to the supplier, who in turn would release the item to taxpayer. Taxpayer would then arrange with a shipper for pick-up of the item at the supplier's location for delivery to the closest international port, usually within a day or two after the item had been released to taxpayer. In a few cases where the port was not ready to receive the shipment, taxpayer would arrange to store the item at a nearby warehouse or at his residence in Beaverton until the port was ready to receive the item and load it into the shipping container.

Taxpayer claimed a total of $39,007 on Line 27a on Schedule C of his 2013 federal income tax return under the heading "Other expenses," including certain freight and travel expenses. Taxpayer also elected to expense $7,820 on Line 13 on Schedule C of his 2013 federal income tax return, in the category of "Depreciation and section 179 expense deduction," for purchase of a dune buggy (the Dune Buggy). Taxpayer also claimed the total amount of $208,343 as COGS on Line 42 on Schedule C of his 2013 federal income tax return.

The department audited taxpayer's 2013 Oregon income tax return and proposed adjustments to taxpayer's deductions and COGS, resulting in a net tax owed of $3,090 and a penalty of $618 for "substantial understatement of income." The department explained its adjustments in a notice of deficiency (Deficiency Notice), mailed to taxpayer on December 16, 2016. The Deficiency Notice stated that the department had accepted certain amounts claimed as "Other expenses" (cell phone/calling cards, lodging, and auto rental) once taxpayer supplied additional evidence that the expenses were incurred in his business. The department disallowed taxpayer's deductions for travel expenses taxpayer claimed to have incurred during 2013 because taxpayer failed to substantiate both that he paid the travel expenses in 2013 and that these travel expenses were primarily incurred by taxpayer for a business purpose. *See* IRC § 274(d).[1] The department also disallowed taxpayer's "Section 179" expense deduction of $7,820 for 2013 payments taxpayer made for the Dune Buggy, which taxpayer had purchased in October 2012 and placed in service in 2013. The department asserted that taxpayer held the Dune Buggy as a floor/demonstration model, and as a result, the department considered the Dune Buggy inventory and not a depreciable business asset that taxpayer could elect to expense pursuant to IRC section 179. *See* IRC § 167(a) (allowing a depreciation deduction for property used in a taxpayer's trade or business or for the production of income); Treas Reg § 1.167(a)-2 (depreciation not applicable to inventories or stock in trade). Consequently, the department added the $19,902 cost of the Dune Buggy to taxpayer's 2013 beginning inventory.[2] Lastly, the department declined to accept, for COGS purposes, a $6,000 receipt for a "supercharger" (the Supercharger) that taxpayer claimed to have sold to a customer in the UAE. The department cited lack of substantiation and unknown business

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2013 edition; references to the Internal Revenue Code (IRC, or the "Code") are to the IRC as in effect and operative for the 2013 calendar year.

[2] Because taxpayer had not reported that he sold the Dune Buggy as of December 31, 2013, the department added that same amount to taxpayer's ending inventory as well. Taxpayer requests the court allow a depreciation expense of "$20,250" for the cost of the Dune Buggy "along with other parts and labor[.]"

purpose, asserting that taxpayer had failed to include a customer invoice or documentation to support taxpayer's assertion that he had installed the Supercharger on a vehicle taxpayer shipped to a customer soon after buying the Supercharger.

Taxpayer requested and received a conference with the department regarding taxpayer's deductions for the freight payment, travel expenses, and depreciation on the Dune Buggy, as well as his request that the cost of the Supercharger be included in his COGS for 2013. The department allowed some items at conference, resulting in a reduction of net tax due and a reduced penalty. Taxpayer appealed to the Magistrate Division from the notice of assessment that accompanied the conference decision letter. Following trial, the magistrate issued a decision in favor of the department, and taxpayer timely appealed to the Regular Division.

Unlike the audit, the department's conference, and the Magistrate Division trial in this matter, proceedings in the Regular Division are governed by formal procedural rules, including the statutory rules of evidence, which often complicate matters considerably, especially for self-represented nonattorney taxpayers. *See* ORS 40.015(2) (Oregon Evidence Code applicable); ORS 305.425(3) ("All hearings and proceedings before the tax court judge shall be in accordance with the rules of practice and procedure promulgated by the court, which shall conform, as far as practical to the rules of equity practice and procedure in this state."). Among other things, those rules require each party to present its exhibits to the court and give the other party a chance to raise any objections, such as objections on the grounds of hearsay. The court then must decide whether to admit each exhibit for use during the trial. In this case, the status of the evidence is as follows: taxpayer's Exhibits 1 and 4; taxpayer's Exhibit 2, pages 1-16, 19-20, and 23; taxpayer's Exhibit 5 pages 4-7, 11-12; taxpayer's Exhibit 6, pages 1-3; and taxpayer's Exhibit 7, pages 1-4, 6-8 were admitted into evidence at trial without objection. Taxpayer's Exhibit 2 contained additional pages that were disregarded at trial at the request of taxpayer. The department stipulated to the dates of travel provided on plane tickets submitted in taxpayer's Exhibit 4. The department also stipulated to the fact that

taxpayer wired money to his sisters, Ruba Khalaf and Reem Khalaf, for payment of the apartment and vehicle rental in the UAE. The department's Exhibits A to D were admitted into evidence without objection.[3] The department objected to several pages in taxpayer's exhibits on grounds of relevance, hearsay, and lack of foundation, which the court took under advisement.[4] The court will address the department's objections in the relevant sections below.

### III.   ISSUES

(1)   May taxpayer deduct the cost of a vehicle freight charge as a business expense under IRC section 162?

(2)   May taxpayer include the cost of the Supercharger in his cost of goods sold for 2013?

(3)   Do the special substantiation rules under IRC section 274 prevent taxpayer from deducting the rental costs of an apartment and vehicle in the UAE as travel expenses?

(4)   May taxpayer deduct part of the cost of the Dune Buggy as an expense under IRC section 179?

### IV.   ANALYSIS

This case involves proof of business expenses and costs. At a minimum, all taxpayers have the burden of proving that they are entitled to the deductions and other items they list on their tax returns, and the law requires them to keep records sufficient to establish the amounts they claim. IRC § 6001; Treas Reg § 1.6001-1(a). For certain kinds of items, including business travel, Congress long ago decided to impose, in addition, detailed and specific recordkeeping requirements in order to curb abuse.[5] The court observed taxpayer's testimony at trial and does not question taxpayer's

---

[3] The department included Exhibits E to H on its list of exhibits exchanged before trial but did not offer them into evidence.

[4] At trial, taxpayer acknowledged that his pretrial memorandum memo is not itself evidence, but rather a summary of evidence that taxpayer intended to present at trial. Taxpayer did not formally offer his pretrial memorandum into evidence during trial.

[5] As discussed below, this case involves *federal* substantiation requirements, which Oregon incorporates in its personal income tax law. *See, e.g.*, ORS 316.007; ORS 316.012.

good faith and sincerity with respect to the items still in dispute after the department's concessions and allowances during the audit and conference processes. The court must resolve these issues by applying the rules governing proof and recordkeeping to taxpayer's facts.

The court first notes an overarching concern that taxpayer expressed, namely that the department fails to understand the nature of his business. ("Comprehending the nature of 'locating' goods in the USA for customers who live abroad has been the main obstacle for the [department] auditors \*\*\*.") Taxpayer testified that he considers himself a "broker" who provides a specific "service," "locating" and matching up his foreign customers with items available from "suppliers" in the United States, as a side occupation to his regular employment. Taxpayer resists the notion that he deals in "inventory," as he does not generally buy merchandise in advance, hoping to find a buyer for it, but instead buys specific merchandise only after receiving earmarked funds from a customer who wants that particular item.

The court does not doubt that taxpayer's customers primarily are attracted by his ability to understand and find exactly what they want. And it is not surprising that taxpayer might wish for simpler tax treatment, such as might be enjoyed by a consultant who earns a straightforward fee for services and never buys or sells merchandise. However, taxpayer filed his return as a seller of goods. He claimed $208,343 in "cost of *goods sold*," an amount that offset more than 90 percent of his gross receipts of $227,461. This manner of reporting is consistent with the evidence: to illustrate his pattern of exporting all-terrain vehicles during the period 2009 to 2013, taxpayer provided receipts of numerous transactions, all of which show Khalaf Motors (or another business name at the same address) as the purchaser. Taxpayer made no attempt to present evidence supporting tax treatment fundamentally different from what he claimed on his return. *See generally* Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates & Gifts* ¶ 40.1 (3rd ed 2019) (identifying six factors that courts use to determine whether a sale has occurred, including parties' treatment of the transaction).

Two of the four issues in this case (the freight expenses and the Supercharger) are disputes about the basic recordkeeping requirements that apply simply because taxpayer is a seller of goods. The court resolves these two issues in favor of taxpayer, because his evidence, although imperfect, is adequate. A third issue (travel expenses) involves the much more demanding recordkeeping requirements in IRC section 274(d). Those special rules require a taxpayer to maintain records that are detailed and contemporaneous with the travel, and particular scrutiny applies to transactions involving family members. The court denies the travel expense deductions because taxpayer failed to keep and produce adequate contemporaneous records to substantiate the expenses. Some of taxpayer's desired evidence also was inadmissible under the hearsay rules. Regarding the final issue (cost of the Dune Buggy), the court concludes that taxpayer held the Dune Buggy not as a depreciable asset for use in his business, but as inventory that he temporarily pulled for "demonstration" purposes, a common practice among vehicle dealers. Although taxpayer does not see himself as a dealer with inventory, the department's treatment of the Dune Buggy fits squarely within a line of federal tax cases.

## A.   *Burden of Proof*

When the department denies a deduction and a taxpayer appeals, the taxpayer bears the burden of showing by a preponderance of the evidence that the deduction is allowable. ORS 305.427; *DeGroat v. Dept. of Rev.*, 23 OTR 254, 257 (2019). A "preponderance" of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Oregon courts have concluded that when the law places the burden of proof on the taxpayer, it is the responsibility of the taxpayer to put forward "sufficient evidence which will weigh more in the mind of the trier of fact than the *** weight of the evidence adduced by the [department] ***." *Sproul v. Commission*, 1 OTR 31, 65 (1962), *rev'd on other grounds*, *Sproul v. State Tax Com.*, 234 Or 567, 382 P2d 99 (1963). The "preponderance of evidence" standard requires (1) a taxpayer to provide the court with facts supporting the taxpayer's position; and (2) that those facts outweigh the department's evidence. *See*

*Dept. of Rev. v. Bahr I*, 20 OTR 434, 448 (2012) (stating that when the evidence in the record does not favor either side, "the court must find against the party bearing the burden of proof"). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof ***." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

B.    *Taxpayer's Deduction for Freight Expenses*

Taxpayer seeks to deduct $1,000 for a cash payment to a freight company for delivery of a Toyota Tundra from a seller in Arizona to taxpayer's residence in Beaverton. (testimony of Khalaf at 11:54:00). The department disallowed the payment at conference because "[n]o charges were totaled on the bill of lading" and because taxpayer's bank statements "only show three cash withdrawals of $200 from September 27th to October 4th."

Section 162 of the Internal Revenue Code allows a taxpayer to deduct from gross income "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC § 162(a). Taxpayer must keep adequate records to establish both the amount the taxpayer paid and the business purpose of any deduction. IRC § 6001; Treas Reg § 1.6001-1(a); *see, e.g.*, *Lyseng v. Comm'r*, 102 TCM (CCH) 280, 2011 WL 4389644 at *3 (US Tax Ct) ("In general, taxpayers must substantiate claimed deductions with evidence such as invoices or receipts that establish that the expenses were actually incurred[.]"). The term "'expense,' when used to determine tax deductions, means money spent; disbursing of money; a drain on one's finances; or the incurring in the tax year of an obligation to pay." *National Can Corp. v. United States*, 520 F Supp 567, 579 (ND Ill 1981), *aff'd*, 687 F2d 1107 (7th Cir 1982). "Whether an expense is deductible under section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances." *Adams v. Comm'r*, 105 TCM (CCH) 1029, 2013 WL 135103 at *9 (US Tax Ct) (citing *Commissioner v. Heininger*, 320 US 467, 473-75, 64 S Ct 249, 88 L Ed 171 (1943)). The department does not contest that the freight charge, if proved, was an ordinary and necessary business expense.

At trial, taxpayer credibly testified that he had arranged for shipment of the Toyota Tundra to his residence in Beaverton because the port of export in Washington was not ready to receive the Tundra for shipment to taxpayer's customer in the UAE. Taxpayer testified that the $1,000 expense represents a $950 freight charge and an additional $50 that taxpayer paid the driver for a tip.

Taxpayer submitted a bill of lading from KT Auto Transport dated October 4, 2013.[6] That bill of lading shows KT Auto Transport picked up a 2014 Toyota Tundra from a Toyota dealership (Right Toyota) in Arizona and delivered it to taxpayer at his residence in Beaverton, Oregon on October 7, 2013. The bill of lading is signed by taxpayer. Taxpayer also produced a separate shipping manifest from KT Auto Transport. That shipping manifest shows that KT Auto Transport picked up a Toyota Tundra from Right Toyota in Arizona on either October 7, 2013, or October 8, 2013, and delivered it to taxpayer's residence in Beaverton, Oregon, between October 10, 2013 and October 12, 2013. The shipping manifest shows the total length of the trip between pick-up and drop-off was 1,354 miles. Taxpayer also submitted an invoice from Accelerated Services LLC Auto Transporters showing a payment to Right Toyota of $950 with respect to a Toyota Tundra. The invoice is dated October 9, 2013.[7] Each document refers to the same vehicle identification number.

Taxpayer made considerable effort to reconstruct this transaction in order to meet his burden of proof.[8] The court finds that the bill of lading, shipping manifest, and

---

[6] Taxpayer testified that two trucking companies were involved in hauling the Toyota Tundra from the Toyota dealership in Arizona to his residence in Beaverton: "Accelerated Services" and "KT Auto Transport."

[7] Taxpayer offered several other documents ("Corvette Documents") in support of the $1,000 freight expense. The department objected to the Corvette Documents on grounds of hearsay, relevance, and lack of foundation. According to the department, the Corvette Documents relate to a different transaction involving two Corvettes, an expense the department allowed. Taxpayer testified that he sought to introduce the Corvette Documents for comparison purposes, presumably to highlight an inconsistency in the department's audit methodology. The court sustains the department's objection to the Corvette Documents.

[8] The court notes that the fact that taxpayer made this payment in cash makes it harder for him to prove the payment.

invoice together provide a contemporaneous record of the shipping charge. The court finds those documents, combined with taxpayer's testimony that he paid the driver upon receiving the Toyota Tundra, to be sufficient evidence that taxpayer paid the $1,000 freight expense for delivery of the Toyota Tundra in 2013. *See National Can Corp.*, 520 F Supp at 579 ("[T]here can be an expense which will qualify as a tax deduction where all other requirements are satisfied, if there is payment in kind or in the equivalent of cash." (Citations omitted.)). The court concludes that taxpayer has carried his burden of proof by showing sufficient records to support treatment of the payment as a business expense pursuant to IRC section 162(a). The court allows taxpayer's $1,000 deduction for payment of the freight expenses.[9]

## C.   *Adjustment to Gross Income for Cost of Goods Sold (Supercharger)*

Taxpayer seeks a $6,000 increase to COGS for his purchase of the Supercharger that was shipped to taxpayer's customer in the UAE during 2013. The department disallowed the adjustment to COGS because taxpayer could not produce the original invoice documenting taxpayer's purchase of the Supercharger in 2013. Taxpayer admitted he had lost the original receipt showing proof of purchase of the Supercharger.

An individual taxpayer computes his or her net profit or loss from doing business as a sole proprietor on

---

[9] The court does not apply the special rules for "listed property." Under IRC section 274(d)(4) any deduction claimed with respect to a passenger automobile is disallowed unless the taxpayer substantiates specified elements of the automobile's use by adequate records or by sufficient evidence corroborating the taxpayer's own statement. *Id*. (identifying specific substantiation requirements for "listed property," including passenger automobiles); Temp Treas Reg § 1.274-5T(b)(6) (additional requirements to deduct the cost of an automobile used in a business). Whether the Toyota Tundra is "listed property" was not briefed by the parties nor was it advanced by the department at any prior stage of taxpayer's appeal, presumably because taxpayer did not use the Toyota Tundra as a means of transportation at any point during 2013. *See, e.g.*, *Ghadiri-Asli v. Comm'r*, 118 TCM (CCH) 355, 2019 WL 5423725 *13 n 11 (US Tax Ct) (citing IRC § 280F(d)(4) ("Listed property includes passenger automobiles, any other property *used as a means of transportation*, and property generally used for purposes of entertainment, recreation, or amusement." (Emphasis added.))). Because the issue was neither briefed nor argued, the court does not decide whether the "listed property" requirements apply.

the taxpayer's Schedule C (IRS Form 1040) by subtracting the COGS, along with ordinary and necessary business expenses, from the gross receipts earned that year. *See* IRC § 61; Treas Reg § 1.61-3(a); *Velinsky v. Comm'r*, 71 TCM (CCH) 2766, 1996 WL 173544 at *3 (US Tax Ct) ("cost of goods sold is taken into account in computing gross income and is not an item of deduction"). "It is a taxpayer's responsibility to maintain adequate books and records sufficient to substantiate all items on the tax return, including the cost of goods sold." *Said v. Comm'r*, 85 TCM (CCH) 1353, 2003 WL 21205252 at *3 (US Tax Ct), *aff'd*, 112 F Appx 608 (9th Cir 2004) (citing IRC § 6001). Any amount claimed as a cost of goods sold must be substantiated. *Azimzadeh v. Comm'r*, TCM 2013-169, 2013 WL 3811481 at *5 (US Tax Ct).

Taxpayer testified that he purchased the Supercharger at the request of a customer in the UAE. Taxpayer also testified that he shipped the Supercharger to the UAE in the same overseas container as a Toyota Tundra. Taxpayer offered a copy of a credit card receipt from Toyota of Gladstone for $6,000, dated March 1, 2013, and a shipping invoice from International TLC, Inc., dated November 13, 2013, for a container shipment from Tacoma, Washington, to the UAE.[10]

"It is well established that courts permit a taxpayer to substantiate deductions through secondary evidence where the underlying documents have been unintentionally lost or destroyed." *Davis v. Comm'r*, 92 TCM (CCH) 514, 2006 WL 3780743 at *4 (US Tax Ct) (citations omitted). However, even when a taxpayer loses an invoice, the taxpayer still bears the burden of proving through sufficient secondary evidence

---

[10] Taxpayer sought to introduce a copy of an email from Dave Ruppert, Service Manager at Toyota of Gladstone, dated December 22, 2017, in order to show that a "quote" for parts from December 22, 2017, was, in effect, a replacement for the lost invoice. The department objected to this email on the grounds of hearsay and lack of foundation. As will be explained further below, the rule against hearsay bars the admission of out-of-court statements introduced for the truth of the matter asserted in that statement. OEC 802. The court concludes that this email is inadmissible hearsay because Dave Ruppert did not appear at trial and taxpayer sought to introduce the statement Dave Ruppert made in his email for its truth. The court sustains the department's objection. Although the department did not object to admitting the quote itself, the quote carries no weight because taxpayer cannot use the email to explain it.

that he actually paid for the items and that he actually sold them in the course of his business. *See id*. Having observed taxpayer's testimony at trial, the court finds it credible with respect to his sale of the Supercharger to a customer in the UAE. *See Freeman v. Comm'r*, 98 TCM (CCH) 236, 2009 WL 2958663 at *6 (US Tax Ct) (citing *Boyd v. Comm'r*, 122 TC 305, 320-21, 2004 WL 886993 (US Tax Ct) ("If documentation is unavailable, we may accept the taxpayer's credible testimony to substantiate the deduction."). In addition, taxpayer reconstructed the amount of the Supercharger expense through contemporaneous evidence of a $6,000 payment to Toyota of Gladstone and by providing a shipping invoice showing that a 2014 Toyota Tundra was shipped alongside a box of auto parts to the UAE on November 13, 2013. The court finds taxpayer's evidence and testimony to be sufficient secondary evidence of his Supercharger expense. *See Davis*, 2006 WL 3780743 at *5 (allowing claimed amounts as deductions where original documents were lost but taxpayer presented credible reconstructions of their expenses). The court concludes that taxpayer has met his evidentiary burden and is entitled to include the $6,000 cost of the Supercharger in his 2013 COGS.

D.   *Foreign Lodging and Vehicle Rental Expense*

Taxpayer seeks to deduct as a business travel expense the cost of an apartment and vehicle he rented in the UAE. The department disallowed taxpayer's deduction because it determined taxpayer had not met the substantiation requirements of IRC section 274 for travel expenses.

The Internal Revenue Code generally allows taxpayers to deduct the cost of lodging and vehicle rental as travel expenses to the extent incurred in the ordinary course of business. IRC § 162(a)(2). In addition to meeting the general substantiation requirements under IRC section 6001, taxpayers seeking to deduct the cost of lodging and vehicle rental as travel expenses must meet the strict substantiation requirements of IRC section 274(d) for the deduction to be allowable. *See, e.g.*, *Griggs v. Comm'r*, 96 TCM (CCH) 248, 2008 WL 4643010 at *5 (US Tax Ct). A taxpayer must substantiate by adequate records, or by sufficient evidence corroborating the taxpayer's own testimony, the amount of the

expense, as well as the time, place, and business purpose of the taxpayer's expenditure or use of the property. IRC § 274(d); Temp Treas Reg § 1.274-5T(b). The elements that must be substantiated to deduct the business use of a passenger automobile, such as the vehicle taxpayer drove in the UAE, are: "(i) the amount of the expenditure; (ii) the mileage for each business use of the automobile and the total mileage for all uses of the automobile during the taxable period; (iii) the date of the business use; and (iv) the business purpose of the use of the automobile." *Adler v. Comm'r*, 99 TCM (CCH) 1181, 2010 WL 934267 at *11 (US Tax Ct), *aff'd*, 443 F Appx 736 (3rd Cir 2011) (citing Temp Treas Reg § 1.274-5T(b)(6)). Finally, in addition to satisfying the substantiation requirements in IRC section 274(d), a taxpayer who travels outside the United States must comply with IRC section 274(c), which requires a taxpayer to track much more precisely—and to document—the time the taxpayer spends on business vs. nonbusiness activity and allows deductions only to the extent the expenses are specifically allocable to business activity.[11] *See* Treas Reg § 1.274-4; *see also* Temp Treas Reg § 1.274-5T(c)(1).

Taxpayer credibly testified that during 2013 he traveled to the UAE for business purposes, which required him to rent an apartment and a vehicle. He also testified that he used the apartment to meet with potential customers in the UAE. Taxpayer explained that the apartment was leased to his sister, Reem Khalaf, a resident of the UAE, and the vehicle was owned by taxpayer's other sister, Ruba Khalaf,

---

[11] The more rigorous tracking and expense allocation rules under IRC section 274(c) apply when the trip exceeds one week and the amount of time attributed to nonbusiness activities is more than 25 percent of the total time of the trip. *See* Treas Reg §§ 1.274-4(c)-(d) (rules for determining the length of the trip and the amount of time attributable to nonbusiness activities). Taxpayer told the court that he understood IRC section 274(c) to mean that if a taxpayer's foreign trip lasts less than seven days, the IRS considers the taxpayer to have made the trip "entirely for business." *See* IRS Pub 463 (2018) at 7 ("Your trip is considered entirely for business if you were outside the United States for a week or less ***."). Taxpayer misunderstands the law. By keeping a foreign trip to a week or less, a taxpayer avoids only the *overlay* of allocation rules in IRC section 274(c). The general rules of substantiation for *all* travel expenses continue to apply. *See, e.g.*, *Helguero-Balcells v. Comm'r*, TC Summ Op 2012-31, 2012 WL 1165336 at *4 (US Tax Ct) ("*In addition to* the strict substantiation requirements of section 274(d), foreign travel expenses, *if otherwise deductible*, are subject to the allocation requirements of section 274(c)." (Citations omitted; emphases added.)).

also a resident of the UAE.[12] Taxpayer offered signed and translated statements of Reem Khalaf and Ruba Khalaf as proof that he paid them for his use of the apartment and the vehicle during his visit to the UAE, and that his use of both properties was for a business purpose. The department objected to taxpayer's sisters' statements as inadmissible hearsay.

The court sustains the department's objection. As explained by the Oregon Supreme Court, "[h]earsay is a 'statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Bement*, 363 Or 760, 765, 429 P3d 715 (2018) (quoting Oregon Evidence Code (OEC) 801(3)). Taxpayer did not present Reem Khalaf or Ruba Khalaf as a witness at trial to testify that taxpayer had paid them for his use of the apartment and vehicle, and that this use was for a business purpose. Consequently, the court concludes that the signed statements contained in taxpayer's Exhibit 5, pages 2, 3, 9, and 10, are inadmissible hearsay because they are out-of-court statements which taxpayer has submitted to the court for the truth of the matter asserted by those statements. *See* OEC 801(3). The court also concludes that these statements do not fall within the so-called "business records" exception to the rule against hearsay, *see* OEC 803(6), because taxpayer did not establish by admissible evidence that either statement was made by a person under a business duty at the time to report taxpayer's payment for use of the apartment or vehicle. *See, e.g.*, *Morgan v. Valley Property and Casualty Ins. Co.*, 289 Or App 454 (2017), *adh'd to on recons*, 290 Or App 595, *rev den*, 363 Or 390 (2018) ("For a business record to be admissible hearsay, not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well." (Citation omitted.)). Taxpayer stated

_____

[12] Taxpayer offered copies of documents that taxpayer identified as copies of the underlying dwelling lease and vehicle purchase contract signed by his sisters. The court admitted the documents without objection. Taxpayer testified that because his U.S. citizenship prevents him from owning or leasing property in the UAE, his signature does not appear on either document, but he represented that his sisters had signed them (the lease is in Arabic and is not translated, and none of the signatures are legible).

on cross-examination that neither of taxpayer's sisters was on the payroll of Khalaf Motors during 2013.[13] As a result, the court cannot consider the written statements of Ruba Khalaf and Reem Khalaf in this case.[14] Thus, even assuming that the remainder of taxpayer's Exhibit 5 establishes that taxpayer's sisters lease the apartment and own the vehicle, taxpayer presented no admissible evidence of his arrangement with his sisters.

The court looks to the remaining evidence to determine whether taxpayer substantiated his apartment and vehicle rental expenses by adequate records or by sufficient evidence corroborating his statements at trial. *See* IRC § 274(d); *see* Temp Treas Reg § 1.274-5T(c)(1) (general rules of substantiation for travel and vehicle expenses). To substantiate travel expenses by "adequate records," the taxpayer must maintain "[a]n account book, diary, log, statement of expense, trip sheet, or similar record" in which each element of an expenditure is recorded "at or near the time of the expenditure or use." Temp Treas Reg § 1.274-5T(c)(2)(ii); *see, e.g.*, *Reynolds v. Comm'r*, 296 F3d 607, 616 (7th Cir 2002) ("Complete, contemporaneous records are the preferred method of substantiation. Taxpayers who pursue alternative methods will have to present evidence that is

---

[13] Taxpayer explained that he considered his sisters to fall within the definition of "business associate" in IRS Publication 463. That definition of "business associate" applies to travel expenses paid by a taxpayer on behalf of another individual. *See id*. at 5. Taxpayer gave the court no evidence that either sister traveled with taxpayer during 2013; nor does taxpayer seek to deduct expenses incurred by either sister on his 2013 federal tax return.

[14] Even if the sisters' statements regarding taxpayer's use were admissible, the fact that taxpayer paid *family members* for his use of the apartment and vehicle would create an additional evidentiary burden for taxpayer. As a general rule, courts closely scrutinize transfers of property between family members to ensure that each transaction was motivated by a bona fide business purpose and that the transaction does not represent a nondeductible gift to the taxpayer or to the taxpayer's family. *E.g.*, *Estate of Reynolds v. Comm'r*, 55 TC 172, 201 (1970) ("The presumption is that a transfer between closely related parties is a gift."); IRC § 274(b)(1) ("No deduction shall be allowed under section 162 *** for any expense for gifts made directly or indirectly to any individual ***."); *Stern v. US*, 436 F2d 1327, 1330 (1971) (quoting Treas Reg § 25.2512-8 ("[A] sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth."). In this case, for example, taxpayer offered no evidence that he compensated his sisters at fair rental value.

equally credible and probative, which will be difficult."). Taxpayer produced a travel log[15] detailing three trips to the UAE.[16] Importantly, taxpayer made no showing that he recorded the information in the travel log contemporaneously with his trips to the UAE. *See* Temp Treas Reg § 1.274-5T(c)(2)(ii)(A) ("[A]t or near the time of the expenditure" means that "the elements of an expenditure or use are recorded at a time when \*\*\* the taxpayer has full present knowledge of each element of the expenditure or use[.]"). The court concludes that taxpayer's travel log does not meet the higher substantiation requirements for travel and vehicle expenses under IRC section 274(d) because taxpayer did not establish that he created the log contemporaneously with his travel. *See, e.g.*, *Hillenga v. Dept. of Rev.*, 21 OTR 396, 413 (2014), *rev'd in part on other grounds*, 358 Or 178, 361 P3d 598 (2015) (taxpayer's single-page summary of mileage and maintenance expenses did not meet substantiation requirements of IRC section 274(d) in part because it did not purport to be a contemporaneous record). Taxpayer submitted no additional evidence to substantiate the business purpose of his use of the apartment in the UAE pursuant to IRC section 274(d). Regarding his use of the vehicle, taxpayer testified on cross-examination that he did not keep a mileage log documenting his use of the vehicle in the UAE. *See* Temp Treas Reg § 1.274-5T(b)(6)(i)(B) (requiring a taxpayer to prove business use of an automobile based on an appropriate measure, such as a mileage log).

Aside from his testimony and travel log, taxpayer's only admissible evidence is the stipulated evidence that

---

[15] Taxpayer introduced the travel log as part of a letter taxpayer sent to the department's auditor on November 10, 2016. The department objected to the letter on the grounds that it was argumentative, assumed facts not in evidence, and contained hearsay. The department's objection to the travel log is overruled and the travel log is admitted. Taxpayer testified that he produced the travel log. He was also available at trial for cross-examination. The department's objection to the remainder of the letter in Exhibit 3, pages 1-7, is sustained. Taxpayer's correspondence with the department's auditor is not relevant to this court's *de novo* proceeding. *See* ORS 305.425(1). As will be explained further, even if the court were to consider taxpayer's email, taxpayer's evidence does not meet the higher substantiation rules for travel expenses under IRC section 274(d).

[16] The plane tickets submitted by taxpayer show that he traveled to the UAE twice: from April 11 to May 13, 2013, and from August 7 to August 18, 2013. Taxpayer submitted a third plane ticket showing a domestic flight from Portland, Oregon, to Long Beach, California.

taxpayer paid his sisters by wire transfer and the copies of the apartment lease and car purchase contract. For the reasons explained, the court finds those records insufficient under the higher substantiation requirements for lodging and vehicle expenses in IRC section 274(d). *See, e.g.*, *Barmes v. Comm'r*, 12 F Appx 415, 418 (7th Cir 2001) ("[W]here the taxpayer has failed to maintain adequate records, IRS regulations require a taxpayer to establish each element of the deduction with a detailed personal statement corroborated by other evidence." (Internal citations omitted.)); *Ghadiri-Asli*, 2019 WL 5423725 at *11 ([A] "taxpayer is not allowed a deduction or credit on the basis of approximations or unsupported testimony."); *Schladweiler v. Comm'r*, 80 TCM (CCH) 681, 2000 WL 1690282 at *3 (US Tax Ct), *aff'd*, 28 F Appx 602 (8th Cir 2002) ("If a taxpayer does not substantiate the travel expense as required by section 274(d), he is not entitled to a deduction for the expense no matter how plausible it may be that he paid the expense. For expenses covered by section 274, the proposition is simple—a taxpayer who cannot prove the expense loses the deduction."). The court concludes that taxpayer has not substantiated his expenses for the apartment and vehicle rental in the UAE during 2013. The court denies taxpayer's deduction for these travel expenses.

E.   *Dune Buggy Expense*

Taxpayer claimed a deduction for payment of $7,820 toward the cost of the Dune Buggy. The department challenged the deduction, claiming the Dune Buggy was inventory, rather than a depreciable business asset, and that its cost therefore was ineligible to be expensed under IRC section 179.[17]

Section 167 of the Internal Revenue Code provides that "a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or

---

[17] The auditor disallowed the deduction based on evidence showing that taxpayer used the Dune Buggy as inventory during 2013. At conference, however, the department asserted a different reason, stating "it is not reasonable to buy such an expensive item for the primary purpose of advertising the item for resale" and declaring that the Dune Buggy was not "an ordinary and necessary" expense. The department did not assert the "ordinary and necessary" argument at trial.

business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction." IRC § 167(a); s*ee* Treas Reg § 1.167(a)‑1(a); *see also Chapin v. Dept. of Rev.*, 5 OTR 571, 574 (1974) ("The allowance of depreciation for income tax purposes is intended to provide a nontaxable fund to restore property used in producing income at the end of the useful life, when its capacity to produce income has ceased."). The type of property considered depreciable generally includes assets used in a taxpayer's business that gradually wear out or become obsolete during business use, such as manufacturing equipment, buildings, office equipment, or vehicles used to transport employees for business purposes. *See, e.g.*, *Hewlett-Packard Co. v. US*, 71 F3d 398 (Fed Cir 1995) (holding that "rotable parts" used in servicing customer computers are depreciable property, not inventory). In recent years, as an economic stimulus tool, Congress has, within limits, allowed taxpayers to deduct the *entire* cost of certain depreciable business assets as an expense in the taxable year in which the business asset is placed into service in the taxpayer's trade or business. IRC § 179(a). Taxpayer claimed the Dune Buggy payment of $7,820 as such a "Section 179" expense for 2013.[18]

Critically, a taxpayer is not allowed to claim depreciation deductions (or a Section 179 expense deduction) for property that is "inventory."[19] Federal courts have defined "inventory" to mean "property that is held for sale." *Galedrige Const., Inc. v. Comm'r*, 73 TCM (CCH) 2838, 1997 WL 269574 at *8 (US Tax Ct) (citation omitted). When determining whether a vehicle owned by a taxpayer is nondepreciable inventory, or whether it is a depreciable business

---

[18] As with travel expenses, the heightened substantiation requirements under IRC section 274(d) also apply to depreciation or Section 179 deductions for "listed property," including all-terrain vehicles. *See Singh v. Comm'r*, 97 TCM (CCH) 1146, 2009 WL 349745 at *1 (US Tax Ct) (considering "listed property" requirements with respect to an applicable IRC section 179 deduction); *see also Benavides & Co., P.C. v. Comm'r*, 118 TCM (CCH) 221, 2019 WL 4257012 at *9 (US Tax Ct) (taxpayer's use of an all-terrain vehicle is "listed property" subject to heightened substantiation requirements under IRC section 274(d) and IRC section 280F(d)(4)(A)(iii)).

[19] Section 1.167(a)-2 of the federal Treasury Regulations, which the department asserts applies to taxpayer's purchase of the Dune Buggy, provides that no depreciation deduction may be taken with respect to "inventories" or stock in trade.

asset, "it is not the nature of the property itself which is determinative but rather *the purpose* for which the property is held." *Latimer-Looney Chevrolet, Inc. v. Comm'r*, 19 TC 120, 125 (1952) (emphasis added). For example, cases involving whether a car held by a car dealer is inventory or a depreciable business asset depend on the specific facts. In *Latimer-Looney Chevrolet*, the United States Tax Court held that certain cars removed from inventory were depreciable property because they were used as company cars for 8,000 to 12,000 miles before being eventually sold. *Id*. at 125-26. On the other hand, a dealer that temporarily withdraws certain vehicles from its inventory to use as "demonstration" vehicles meant to stimulate future sales cannot then claim depreciation deductions on those vehicles unless the evidence clearly shows that the vehicles were used for a business purpose other than sale to customers. *See* Rev Rul 75-538, 1975-2 C.B. 35 (1975) (so stating); *see also Duval Motor Co. v. Comm'r*, 264 F2d 548 (5th Cir 1959), *aff'g* 28 TC 42 (1957); *Luhring Motor Co.*, 42 TC 732 (1964); *R. E. Moorhead & Son, Inc.*, 40 TC 704 (1963). Because taxpayer bears the burden of proof here, it is taxpayer's responsibility to convince the court, by a preponderance of evidence, that he used the Dune Buggy as a depreciable business asset, such as for strictly business transportation purposes, and that he did not merely keep it for "demonstration" purposes and eventual sale.

As noted above, taxpayer offered copies of invoices from 2009 to 2012 as evidence of his long-standing business practice of selling dune buggies to customers overseas.[20] Taxpayer explained that, unlike his prior purchases, he bought the Dune Buggy using funds he borrowed from a

---

[20] Taxpayer also offered copies of emails he exchanged with Paul Vai, the department's auditor, during 2016. The department objected to these emails on the grounds of hearsay and relevance. In response, taxpayer explained that he intended to show that he had introduced "evidence during the time of that audit that did not make it into the deficiency letter." The court sustains the department's objection. Not only did taxpayer fail to take Vai's testimony on this point during trial (making the emails inadmissible as hearsay), the *de novo* nature of this court's proceedings renders irrelevant any dispute over documents Vai did or did not review on audit. *See* ORS 305.425(1). Even if the court were to consider these emails, the totality of the evidence presented by taxpayer, including Vai's testimony, shows taxpayer used the Dune Buggy as inventory and not a business asset during 2013.

lender unrelated to himself or to the customer and paid for upgrades on it using his own money, not money wired to him from any prospective purchaser in the UAE. Taxpayer testified that he "kept the mileage low" on the Dune Buggy because he intended to use it as a prototype and demonstration unit to stimulate future purchases of dune buggies. Taxpayer also testified that after realizing customer demand for the Dune Buggy as modified had decreased due to seasonal trends specific to the dune buggy industry, he attempted to sell the Dune Buggy.[21] The court finds no evidence in the record that taxpayer used the Dune Buggy for any *other purpose* than to promote his business of locating dune buggies for customers in the UAE. *Cf. Dehaai v. Comm'r*, 56 TCM (CCH) 1549, 1989 WL 26380 (US Tax Ct) (concluding that taxpayer was entitled to depreciation expense deductions on two items of equipment because taxpayer held the equipment as prototypes meant to secure investment funding from large manufacturers and not as inventory for sale to customers). The fact that taxpayer chose to keep the mileage low and then attempted to sell the Dune Buggy also indicates that taxpayer did not use the Dune Buggy as a depreciable business asset but rather as property held for sale to customers in the ordinary course of his business. *See, e.g.*, *Sovereign v. Comm'r*, 281 F2d 830, 834-35 (7th Cir 1960) ("Temporary use of property in a business [as depreciable property] does not prevent its classification as primarily held for sale to customers in the course of business."). The court finds that taxpayer has not shown he used the Dune Buggy as a business asset. The court concludes that taxpayer is not entitled to expense his $7,820 payment for the Dune Buggy.[22] Now, therefore,

---

[21] Taxpayer's testimony is consistent with Vai's testimony that taxpayer had told him the Dune Buggy was bought as a "floor model" and that taxpayer later attempted to sell the Dune Buggy online.

[22] As an alternative, taxpayer asserted that he is entitled to deduct his payment for the Dune Buggy as "the cost of developing a new product" under IRC section 174. Subject to stringent requirements, IRC section 174(a) generally allows a taxpayer to deduct specified research and development expenditures incurred in a taxable year. On the record presented, there is no evidence that taxpayer's purchase of the Dune Buggy constitutes "research and experimental expenditures" within the meaning of section 174(a) because taxpayer testified at length that he bought the Dune Buggy for promotional purposes. *See* Treas Reg § 1.174-2(6) (defining "experimental expenditures" as expressly *excluding* "expenditures for \*\*\* (v) Advertising or promotions"). In addition, Treas Reg section 1.174-3(b) provides:

## V.  CONCLUSION

IT IS THE OPINION OF THIS COURT that Plaintiff has established by a preponderance of the evidence that he is entitled to a deduction of $1,000 for the cost of the freight shipment and that he is also entitled to a $6,000 adjustment to COGS for the cost of the Supercharger; and

IT IS THE OPINION OF THIS COURT that Defendant's denial of Plaintiff's deductions for the costs of the apartment and vehicle rental in the UAE, and his Section 179 deduction for payment on the Dune Buggy, is correct.

Counsel for Defendant is directed to submit an appropriate form of judgment.

---

"If the taxpayer fails to adopt the method [described in section 174(a)] for the first taxable year in which he incurs such expenditures, (*i.e.* research and experimental) he cannot do so in subsequent taxable years unless he obtains the consent of the Commissioner under section 174(a)(2)(B) \*\*\*." The court concludes that taxpayer is not entitled to an expense deduction for research and product development under IRC section 174.