IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| STEVEN B. GARNER, | ) | |
| and HEIDI M. GARNER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 230424N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment, dated October 10, 2023, for the

2019 tax year. A trial was held on September 26, 2024, in the courtroom of the Oregon Tax

Court. Kevin O'Connell, an Oregon attorney, appeared on behalf of Plaintiffs. Plaintiffs each

testified.[1] Brian Collins and Samuel B. Zeigler, Senior Assistant Attorneys General, appeared on

behalf of Defendant. Fadi Abouadas (Abouadas), tax auditor, testified on behalf of Defendant.

Plaintiffs' Exhibits 1 to 65, 111, and 131-133 were admitted without objection.[2] Defendant's

Exhibits A to Q were admitted without objection.

## I. STATEMENT OF FACTS

Steven testified that he has been a timber cruiser for over 30 years, including during

2019. He is self-employed and operates through his business, Garner Timber Services (GTS).

(*See* PE1413 (GTS description).) Steven described the various aspects of GTS' business. 80 to

85 percent of his work is cruising timber throughout the Western U.S. and Canada, and Alaska.

---

[1] It is customary for the court to use parties' last names. This Decision references two individuals with the same last name, Garner. To avoid confusion, the court will use the first name of the individual referenced.

[2] Plaintiffs exchanged Exhibits labeled 1 to 133 but Exhibits 66 to 129 were duplicates of Exhibits 1 to 65. The court received testimony on Exhibit 111 and so admits it.

This work involves appraising timber for anticipated sales by walking the woods to determine the volume and grade. Steven sometimes coordinates tree planting for clients following harvest. He does "property layout" work, noting boundaries, streams, and other features. Steven's work is year-round, but there are some seasonal lulls, so he guides big game hunters in the fall.

Steven testified that, in 2019, he charged clients an hourly fee and was typically able to do one or two jobs per week. (*See* PE142-152 (select invoices).) He had to bid jobs, around 5 per week, which took approximately 20 percent of his potential work time, along with required travel. (PE1413.) Steven maintained a business bank account in which he deposited client payments, usually checks. (*See* DE52-144 (business bank account).) He charged clients for meals but had no client to charge when he was bidding a job.

Steven drove to all work sites except in Alaska, in which case he flew. He used several different vehicles and was usually fixing one vehicle at any point in time. Steven worked three to seven days per week, with some jobs taking up to a week to complete. He would often leave at 4:00 a.m. and not return until 11:00 p.m. or the next day. Steven would stay in motel or camp depending on the location. Sometimes contractors joined him on a job, and he paid them by check. Steven brought a dog with him for protection against wildlife and other dangers in the woods.

Steven testified that he drives at least 300 days per year and believes 99 percent of his travel was for business. He maintained a day planner on the road in which he recorded mileage and notes, including odometer readings when he was going to bill a client. (*See* PT220-273 (day planner).) Steven testified that he kept fuel and other receipts, noted the job when possible, and placed them in a "big paper bag." Heidi, and sometimes their children, helped organize his receipts. She prepared GTS's financial records and sent them to Plaintiffs' tax preparer.

Heidi testified that she works for Pacific University, but she also helps Steven with his books and records. They maintained separate business and personal bank accounts in 2019 so they could distinguish business and personal items. Even if a receipt was missing, Heidi could look at the business bank statement. She used receipts and bank statements for both client invoices and tax preparation. The preparer gave her a "tax organizer" with different categories and Heidi color-coded bank statement items accordingly. (PE1187-1299.)

Abouadas testified that he audited Plaintiffs' 2019 return. (DE12-23.) He performed a bank deposit analysis of Plaintiffs' business and personal accounts, finding additional Schedule C income of $37,933 in the business account and other additional income of $3,099 based on unidentified deposits in the personal account. (DE26-27, 34.) Abouadas adjusted numerous Schedule C expenses, ultimately allowing $107,914 out of the $228,049 claimed. (DE34.) The two largest adjustments were to contract labor (also identified as "trees and planting"), and to car and truck expenses. (*See id.*) Additional expenses and adjustments are discussed in the analysis.

With respect to contract labor, Abouadas testified that he made two adjustments. First, on the "federal return," he increased the expense by $413 and, second, on the "state return," he added back $26,330 because Plaintiffs did not correctly file Forms 1099-MISC. (DE15-16, 19.) Steven testified that he mailed paper Forms 1099-MISC to contractors in 2019. Heidi testified that she provided all the Forms 1099-MISC to the tax preparer. Abouadas testified that he never received proof that Plaintiffs mailed Forms 1099-MISC to either Defendant or the IRS. Heidi testified that Plaintiffs learned for the first time at audit that the forms had to be filed by iWire (electronically), and they did so in 2023. (PE52-53.)

Abouadas disallowed vehicle and travel expenses because Steven's mileage log did not provide exact addresses, and he did not always identify the vehicle used or the business purpose

of a trip. Abouadas never received a summary of all jobs or all odometer readings. Steven testified that he often did not have a precise address for a job because it was in the woods. During audit, he provided a sampling of longitude, latitude, and GPS coordinates for several jobs as requested by Defendant. (PE326-354.) Steven testified that he did not always take the shortest route to a job, particularly when there was traffic. Abouadas provided an alternate calculation of what vehicle expenses might be allowed if the mileage log were accepted. (DE15.)

## II. ANALYSIS

Broadly, the issue presented is the amount of Plaintiffs' taxable income for the 2019 tax year. To reach that determination, the court considers the following questions: (1) whether any additional income identified by Defendant was nontaxable; (2) whether any additional deductions for contract labor may be allowed beyond those allowed by Defendant; and (3) whether any other business expense deductions may be allowed beyond those allowed by Defendant.

Unless otherwise modified by Oregon law, taxable income for purposes of computing Oregon personal income tax "means the taxable income as defined in subsection (a) or (b), section 63 of the Internal Revenue Code[.]" ORS 316.022(6), ORS 316.048.[3] The code allows deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" Internal Revenue Code (IRC) § 162(a). An "ordinary" expense means one "of common or frequent occurrence in the type of business involved." *Deputy v. du Pont*, 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940). A "necessary" expense is "appropriate or helpful" to the taxpayer's business. *Welch v. Helvering*, 290 US 111, 114, 54

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

S Ct 9, 78 L Ed 212 (1933). "[N]o deduction shall be allowed for personal, living, or family expenses." IRC § 262(a).

Taxpayers must keep, and be prepared to produce, "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); IRC § 6001. Generally, if an expense is deductible, but the taxpayer is unable to fully substantiate it, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). However, the estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). Certain listed expenses are subject to more stringent substantiation requirements. IRC section 274(d) requires the taxpayer to substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *."

As the parties seeking relief in this court, Plaintiffs bear the burden of proof by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence. ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). The court has jurisdiction to determine the correct amount of the deficiency, even if on "grounds other or different from those asserted by" Defendant. ORS 305.575. The court begins its analysis of the three issues in this case by examining whether the additional income Defendant added to Plaintiffs' gross income is taxable.

A.      *Gross Income*

Unless otherwise excepted, "gross income means all income from whatever source derived," including "compensation for services" and "gross income derived from business[.]" IRC § 61(a). During audit, Abouadas reviewed Plaintiffs' bank accounts and found unreported income of $37,933 in Plaintiffs' business bank account, and $3,099 in Plaintiffs' personal bank

account. (DE14, DE19.) He increased Plaintiffs' Schedule C gross receipts from GTS based on the unreported income in the business account, and he increased Plaintiffs' other income based on the unreported income in Plaintiffs' personal account. (*Id.*)

1. *Business bank account deposits*

Plaintiffs maintain that many of the deposits identified in the business bank account were reimbursements for tree planting purchases. (*See* PE90-PE116.) Only a few of the checks that Plaintiffs provided reference tree planting. (*See, e.g.,* PE98 ("seedling trees"); PE102 ("partial tree planting").[4] Even if some payments to GTS were to reimburse for trees planted, such income is still "gross income derived from business" and must be reported as such. To the extent GTS incurred expenses for seedlings and tree planting, it may deduct those expenses.[5] Plaintiffs have not demonstrated that $37,933 deposited into the business bank account was nontaxable.

2. *Personal bank account deposits*

Defendant flagged five deposits into Plaintiffs' personal bank account as "unidentified" and determined they were taxable. (DE27.) Those deposits were $280 in March 2019, $429.20 in May 2019, $215 in August 2015, $1,375 in November 2019, and $800 in December 2019, for a total of $3,099 in unidentified deposits. (*Id.*) Defendant identified other deposits in Plaintiffs' personal account, including $46,647.56 in Heidi's wages, $18,703.82 in transfers, and a few smaller amounts for refunds, reimbursements, and Venmo transfers. (*Id.*) The total of all amounts deposited into Plaintiff's personal account was $73,426.92. (*Id.*) With respect to unidentified deposits into their personal account, Plaintiffs explained that they reflected cash sales of personal items or loans from friends. For instance, Steven testified that, in 2019, he sold

---

[4] Plaintiffs offered notes identifying other payments as being for trees or tree planting, but they did not explain the basis for those notes or offer other documentary evidence to support them. (*See* PE90.)

[5] This deduction is discussed in section C of the analysis, other business expenses.

a quad, a zodiac boat acquired in 1999, an old pickup (for parts), and similar personal items that had never been used for business or depreciated.

In considering whether those unidentified deposits were taxable, the court must consider the purpose and the appropriate use of the bank deposit analysis by a taxing authority for the identification of additional, unreported income. The bank deposit analysis is an "indirect method[] of reconstructing income * * *." *Yoshihara v. Comm'r*, 78 TCM (CCH) 789, 1999 WL 1025407 at *2 (1999) (applying method to taxpayers with landscaping business who did not file returns). It is typically used where taxpayers failed to maintain adequate records. *See, e.g., Choi v. Comm'r*, 379 F3d 638, 639 (9th Cir 2004) (finding fraudulent intent and imposing penalty); *Kling v. Comm'r*, 81 TCM (CCH) 1448, 2001 WL 309060 (2001) (taxpayer failed to keep adequate records of sports memorabilia activity). "The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances." *Yoshihara*, 1999 WL 1025407 at *2. "Bank deposits are prima facie evidence of income, and the Commissioner need not show a likely source of that income." *Id.* Credible testimony that is consistent with other available evidence may rebut a determination that deposits were taxable. *See Estate of Sandler v. Comm'r*, 38 TCM (CCH) 915, 1979 WL 3292 (1979) (concluding that deposited "cash hoard" of $132,770 was nontaxable where taxpayer was a doctor who had been retired from active practice for 13 years before years at issue and was in poor health during years at issue, thus could not have earned the funds in years at issue).

Here, the court finds that Steven's testimony, taken in the context of other evidence, is sufficient to establish that the $3,099 in unidentified deposits into Plaintiffs' personal account were not taxable. Steven maintained a separate bank account for his business and the court received no evidence that he deposited business funds directly into Plaintiffs' personal account.

(*See* DE27-30 (no deposits into personal account associated with Schedule C income).) Heidi received income from wages that were deposited into the personal account and documented. (*See id.*) There is no allegation that Plaintiffs engaged in any other activity that produced income. Steven's explanation that Plaintiffs received cash from selling old personal items or borrowing money from friends is plausible and consistent with the frequency and amounts of deposits at issue (amounts ranging from $215 to $1,375, sporadically deposited). Accordingly, the court finds $3,099 of other income should be removed from Plaintiffs' taxable income.

B. *Deduction for Contract Labor Expenses*

Plaintiffs claimed $64,751 in contract labor expenses and Defendant allowed $65,164, an increase of $413, with respect to Plaintiffs' "federal return." (DE15, DE34.[6]) For Plaintiffs' "Oregon return," Defendant allowed $38,421 and added the remainder ($26,330) to other additions to taxable income. (DE15-16.) Defendant explained that the following amounts were disallowed because Plaintiffs failed to provide proof that they filed Forms 1099-MISC timely with Oregon: $800 to Ray Winter Trucking; $1,600 to RSG; $1,406.25 to Todd Balsiger; $6,915 to Tim Mace; and $14,302.60 to Pacific Northwest Forestry Inc. (*Id.*; *see also* DE50.)

Plaintiffs provided copies of Forms 1099-MISC for the following payments: $6,915 to Tim Mace (PE1356); $14,302.60 to Pacific Northwest Forestry Inc. (PE1356); and $1,406.25 to Todd Balsiger (PE1358). Plaintiffs also provided an iWire submission summary showing they submitted 2019 Forms 1099-MISC for Todd Balsiger and Tim Mace on October 11, 2023. (PE52-53.) With respect to Pacific Northwest Forestry Inc., Plaintiffs provided a Form W-9

---

[6] Defendant explained that Plaintiffs provided receipts totaling $68,214, of which Defendant allowed all but the following: $1,800 to Jack Kleinhoff, $50 to Mason, and $1,000 to Steven Cantu. (DE15.) Defendant determined those expenses had no business purpose. Additionally, Defendant deemed an expense of $200 to Brittney Soderberg for animal services to be personal. (*Id.*)

dated April 1, 2023, indicating it was an S-corporation. (PE940.[7]) Defendant determined that the Form W-9 was irrelevant to the 2019 tax year. (DE16; DE50.) Abouadas testified that he looked up Pacific Forestry online and the address appeared to be associated with an individual.

        1.       *Overview of the legal standard for reporting contract labor expenses*

Although the deduction for contract labor is a business expense under federal law, the issue here concerns Defendant's disallowance of $26,330 under state law. ORS 305.217 states:

> "No deduction shall be allowed under ORS chapter 316, 317 or 318 to an individual or entity for amounts paid as wages or as remuneration for personal services if that individual or entity fails to report the payments as required by ORS 314.360 or 316.202 on the date prescribed therefor (determined with regard to any extension of time for filing) unless it is shown that the failure to report is due to reasonable cause and not done with the intent to evade payment of the tax imposed by ORS chapter 316 or to assist another in evading the payment of such tax."

ORS 314.360 requires information returns – such as federal Form 1099-MISC – to be filed with Defendant "under such regulations and in such form and manner and to such extent as it may prescribe." Defendant has promulgated a rule pursuant to that authority that requires information returns, including form 1099-MISC, to be filed "electronically" with Defendant "by the federal due dates." OAR 150-314-0140(3). Defendant is permitted to grant an exception to the filing requirement "upon a showing of undue hardship[,]" which is "determined on a case-by-case basis." OAR 150-314-0140(5). Where no exception has been granted and taxpayer fails to timely file Forms 1099-MISC with Defendant, taxpayer is barred from receiving a deduction for remuneration paid for personal services under ORS 305.217. *Jensen v. Dept. of Rev.*, TC-MD 220140R, 2024 WL 413982 at *2 (Or Tax M Div, Feb 2, 2024).

/ / /

---

[7] The Form W-9 gives the company's name as "Pacific Northwest Forestry, LLC."

The only remaining exception provided by statute is if taxpayer shows "that the failure to report [was] due to reasonable cause * * *." ORS 305.217. To establish "reasonable cause" for failure to report, Defendant's rule requires taxpayer to "show there was a circumstance beyond [taxpayer's] control that caused the failure to file returns as required by law." OAR 150-305-0130(2).[8] Examples of circumstances beyond taxpayer's control include death or illness of taxpayer or an immediate family member; destruction by fire, natural disaster, or casualty; an unforeseen and unavoidable absence from the state; and reliance on incorrect advice from a tax professional. OAR 150-305-0068(5). This court has held that "ignorance of the law" does not qualify as a circumstance beyond taxpayer's control. *See Miller v. Dept. of Rev.*, TC-MD 140085C, 2014 WL 3817584 at *3 (Or Tax M Div, Aug 4, 2014); *see also Jensen*, 2024 WL 413982 (observing that lack of knowledge does not satisfy reasonable cause standard).

2.    *Application to Plaintiffs' deduction for contract labor*

To begin, the court considers whether Plaintiffs were required to file Forms 1099-MISC for each of the payments at issue. Pursuant to IRC section 6041(a), a person who, in the course of their trade or business, makes a payment of at least $600 to another person during the year for compensation must report the payment to the IRS on Form 1099. Payments to corporations are an exception to the reporting requirement. Treas Reg § 1.6041-3(p)(1)); *see also Routledge v. Dept. of Rev.*, 24 OTR 103, 106 n6 (2020) (noting that regulation enacted pursuant to IRC section 6041(a) "excludes most payments to corporations" from information reporting). Here, Plaintiffs maintain that they were not required to issue a Form 1099-MISC to Pacific Forestry

---

[8] As this court noted in *Anfilofieff v. Dept. of Rev.*, TC-MD 200342G, 2021 WL 1526743 at*2 (Or Tax M Div, Apr 19, 2021), it is not clear if this standard is a valid interpretation of the statutory language, particularly given that a different subsection of the rule applies a different "reasonable cause" standard. The court did not ultimately decide the question because taxpayer in that case offered no cause, reasonable or otherwise. *Id.* at *3.

because it was a corporation, and they provided a Form W-9 to support that contention. Defendant rejected the Form W-9 as insufficient evidence because it was signed in 2023.

This question ultimately depends on the burden of proof and whether Plaintiffs have shown "more likely than not" that Pacific Forestry was a corporation. *See Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012) (explaining that under ORS 305.427 taxpayer must show requested relief "is more likely than not"). The Form W-9 was signed and certified under penalty of perjury by a representative of the company and, as such, it meets that standard. While its does not tie back to 2019, the court received no evidence to suggest a status change between 2019 and 2023.[9] The court accepts Plaintiffs' evidence that Pacific Forestry was a corporation, and Plaintiffs were not required to issue it a Form 1099-MISC. Plaintiffs are allowed a deduction of $14,302.60 for contract labor.

With respect to the remaining payments,[10] Plaintiffs do not appear to dispute that Forms 1099-MISC were required and, indeed, Plaintiffs provided copies of Forms 1099-MISC issued to Todd Balsiger and Tim Mace.[11] Plaintiffs admit they were unaware of the requirement to file those forms electronically with Oregon and did not do so until 2023. Plaintiffs' explanation based on lack of knowledge does not satisfy the "reasonable cause" requirement. *Miller*, 2014 WL 3817584 at *3; *Jensen*, 2024 WL 413982. Accordingly, the court finds no basis to allow Plaintiffs any additional deductions for contract labor.[12]

---

[9] Abouadas testified that an online address search suggested Pacific Forestry was associated with an individual, but that fact is not dispositive as to whether it was organized as an S corporation as reported on the Form W-9. For example, an S corporation may be a single member entity.

[10] $800 to Ray Winter Trucking; $1,600 to RSG; $1,406.25 to Todd Balsiger; $6,915 to Tim Mace.

[11] The court received no evidence of Forms 1099-MISC issued to Ray Winter Trucking or RSG.

[12] During closing argument, Plaintiffs' counsel argued that Defendant's application of ORS 305.217 was inconsistent, at times allowing the deduction despite late-filed forms, and that the application of ORS 305.217 in this case violated the "excessive fines" clause of the 8th Amendment to the US Constitution. Neither argument was

C.    *Deduction for Other Business Expenses*

The court next considers the third issue, whether any other business expense deductions may be allowed beyond those allowed by Defendant. The analysis begins by examining the expenses subject to strict substantiation under IRC section 274(d), and then considers the remaining business expenses not subject to that standard.

1.    *Expenses subject to strict substantiation*

a.    Vehicle-related expenses, depreciation

Plaintiffs claimed $25,379 in vehicle expenses, which Defendant denied. (DE34.) The expenses claimed were for a 1999 Chevy Suburban, 2005 Ford F250, a 2004 Dodge 2500, and a 2001 Ford Excursion. (DE40.) Plaintiffs also claimed $21,267 in depreciation expenses, of which Defendant denied $19,067. (DE34.) The expenses disallowed were for three vehicles: the 1999 Chevy Suburban, the 2005 Ford F250, and the 2001 Ford Excursion. (DE48.)

Vehicle expenses are subject to the higher substantiation requirements of IRC section 274(d) and generally must be supported by evidence such as a mileage log. *See Khalaf v. Dept. of Rev.*, 24 OTR 1, 16 (2020), *citing* Temp Treas Reg § 1.274-5T(b)(6)(i)(B). Steven maintained a day planner with notes about his business travels. (PE23.) His notes are somewhat difficult to read because they are handwritten, reference several different vehicles, list general locations, and are missing details such as ending odometers for two of the vehicles. Abouadas made a careful review of the calendar during audit and Plaintiffs responded to his requests for more detail, including providing GPS, longitude, and latitude for several locations. (*See* PE274-354, DE41-47.) Abouadas nevertheless denied Steven's vehicle-related deductions, concluding the business purpose and vehicle use were not adequately documented. (DE14-15.)

---

developed through evidence or briefing, so the court in unable to consider them in this appeal.

Abouadas presented alternate estimates of business use if the planner is accepted: 50.32 percent business use for the 1999 Chevy Suburban, resulting in $3,625 in vehicle expenses, and 1.39 percent business use for the 2001 Ford Excursion, for $97 in vehicle expenses. (DE15.) Although Abouadas found 9,856 business miles for the Ford F250 and 440 business miles for the 2004 Dodge 2500, he was unable to determine a percentage of business use for either vehicle due to the lack of an ending odometer reading.[13] (*Id.*)

The court has no doubt that Steven drove to numerous job sites around the Western U.S. and Canada. He explained the business purpose of those trips through his sworn testimony. Steven maintained a contemporaneous log in the form of his day planner. For those reasons, the court accepts Abouadas' alternate calculation of Steven's deductible vehicle expenses for the 2019 tax year: $3,722 for expenses associated with the Chevy Suburban and the Ford Excursion. Extending that finding to Steven's depreciation expenses, the court allows a total of $557 in depreciation for the Chevy Suburban and the Ford Excursion.[14] (*See* DE16, DE48.)

b.      Travel expenses

Plaintiffs claimed $12,847 in travel expenses, of which Defendant allowed $3,974 and disallowed $8,873. (DE7, DE34.) Abouadas explained that he disallowed expenses for a variety of reasons including missing or duplicate receipts, no established business purpose, no purchase description, and purchases that were not in Steven's name. (DE17, DE37-38.)

Like vehicle expenses, travel expenses are subject to strict substantiation under IRC section 274(d). *See Khalaf*, 24 OTR at 6, 8 (noting the need for an "account book, diary, log,

---

[13] The court similarly found no evidence of ending odometer readings in the exhibits. (*See* PE814-815 (Dodge service receipts with odometer readings); PE856, PE858 (Ford service receipts with odometer readings).

[14] Total depreciation of $557 is based on Abouadas alternate calculation of $531 for the Suburban and $26 for the Excursion. (DE16.)

statement of expense, trip sheet, or similar record" made "at or near the time of the expenditure or use"). Here, Plaintiffs primarily relied on receipts, bank statements, and Steven's day planner to substantiate Steven's travel expenses. A review of Plaintiffs' evidence raises serious questions about the business purpose of claimed travel expenses. For instance, Plaintiffs claimed deductions for expenditures totaling over $5,000 described as "USFS Forestry Lab Juneau" yet the corresponding bank statements revealed they were payments to Royal Caribbean Cruise and Ovation of the Seas Miramar FL. (PE532, PE539-541, PE 554.) Plaintiffs did not explain the business purpose of those expenses. "Generally, travel for personal enrichment is a personal, not a business expense * * *." *Vepsalainen v. Dept. of Rev.*, TC-MD 190252N, 2020 WL 832862 at *5 (Or Tax M Div, Feb 19, 2020), citing *Adelson v. U.S.*, 342 F2d 332 (9th Cir 1965). Upon consideration, the court finds no basis to allow additional travel expenses beyond what Defendant allowed.

c. Meals

Plaintiffs claimed two categories of meal expenses: unreimbursed meals and reimbursed meals that were included in gross income. (DE7-8, DE17-18, DE34.) Specifically, Plaintiffs claimed $3,464 in unreimbursed meals, of which Defendant allowed $64, and Plaintiffs claimed $10,391 in reimbursed meals, of which Defendant allowed $1,075. (*Id.*) With respect to unreimbursed meals, Defendant found numerous issues with Plaintiffs' claimed meals, including duplicates (30 percent on the first page of the summary), missing information, no business purpose, no indication whether meals were incurred while traveling away from home on business or taken in Steven's tax home, and intermingled personal meals. (DE17.) With respect to reimbursed meals, Defendant allowed expenses for meals reimbursed based on an accountable plan and removed the remainder to unreimbursed meals. (DE18.)

Meals are subject to strict substantiation requirements under IRC section 274(d).  Here, Plaintiffs provided four separate exhibit packets containing meal receipts: Ex 21 totaling $6,571 (PE198-205); Ex 22 totaling $8,716.46 (PE206-218); Ex 32 totaling $6,927.22 (PE573); and Ex 34 totaling $10,079.11 (PE655).  Plaintiffs failed to provide a clear explanation for the purpose of those four exhibits and failed to address issues identified by Defendant during audit, such as duplicate receipts and whether meals were taken while Steven was traveling outside his tax home.  Plaintiffs have not satisfied the substantiation requirements of IRC section 274(d), and the court finds no basis to allow additional meal expenses beyond what Defendant allowed.

2.      *Other business expenses*

Plaintiffs claimed several other types of business expenses that are not subject to strict substantiation under IRC section 274(d).  The court addresses each in turn.

a.      Trees and planting

Plaintiffs claimed $33,443 in expenses for trees and planting, of which Defendant allowed $7,293 based on documents received during audit.  (DE8, 19.)  Defendant determined that the balance of the amount was claimed as contract labor.[15]  (DE19.)  Plaintiffs provided an "acknowledgment of order" from Brooks Tree Farm, Inc., with an order date of June 26, 2018, and "ship date" of March 1, 2019.  (PE933.)  The order total is $65,764.51.  (*Id.*)  A "customer ledger" for GTS lists invoices from January through May 2019 with payments totaling $68,670.91 and a balance of -$1,540.  (PE935-936.)  Plaintiffs' bank statements for GTS do not reflect any payments to Brooks Tree Farm.  (*See* DE52-144.)  Plaintiffs did not explain how Brooks Tree Farm was paid or how payments by GTS – if any – were reported on Plaintiffs' tax

_____

[15] Those amounts were $2,679.60 to Phillip Reutov, $22,446 to Mt. St. Helens Reforestation, and $1,523.90 to Vern Eisland.  (DE19.)

return.  The court finds no basis to allow additional tree planting expenses.

        b.      Supplies and "field supplies"

Plaintiffs claimed $7,942 for "supplies" and $15,532 for "field supplies."  (DE7-8.)  With respect to "supplies," during audit Defendant received receipts totaling $3,730 and allowed $1,393.  (DE16.)  Defendant disallowed "personal expenses such as water, detergent, food, mop head, cell phone and accessories, and muscle stimulator, etc."  (DE16-17.)  With respect to "field supplies," during the audit Defendant received receipts totaling $19,125 and allowed $15,729. (DE18.)  Defendant disallowed receipts that were illegible or appeared personal.  (*See id.*)

In this appeal, Plaintiffs provided no exhibit that specifically links to the "supplies" expense claimed.  An exhibit entitled "field supplies" includes a list totaling $19,124.48 and a second list entitled "missed field supplies" totaling $2,944.70.  (PE773-775.)  Plaintiffs attached many pages of receipts and invoices but offered no way to distinguish between expenses that Defendant allowed or disallowed.  (*See* PE776-808.)  Plaintiffs did not specifically address any of the reasons for disallowance identified by Defendant.[16]  Accordingly, the court finds no basis to allow an additional deduction for supplies or field supplies.

        c.      Accounting expenses

Plaintiffs claimed $6,950 in accounting expenses based on payments by GTS to Heidi for bookkeeping.  (DE8, PE357-374.)  Defendant disallowed the deduction because "[p]ayments from one spouse to another are nondeductible capital withdrawals."  (DE18.)  Defendant argues

---

[16] The term disallowance here is somewhat misleading because Defendant allowed *more* "field supplies" during audit than Plaintiffs claimed on their return.  The only "disallowance" is in relation to the packet of receipts labeled as "field supplies" provided at audit and again on appeal.

Plaintiffs "failed to establish a bona fide employer-employee relationship or that plaintiff Heidi Garner actually performed accounting services." (Def's Tr Mem at 8.[17])

Heidi testified that she helped Steven with GTS's books and records and prepared materials for the tax organizer provided to Plaintiffs' tax preparer. That testimony coupled with the checks written from GTS to Heidi supports a finding that Heidi performed bookkeeping services for GTS. The nature of Heidi's relationship to GTS is unclear. The amount paid to Heidi was listed under "other expenses," not wages. The court is not aware of an allegation that Heidi was an employee of GTS. Whether Heidi was operating as employee or independent contractor with respect to GTS, the court finds no evidence that payments were reported on a Form W-2 or Form 1099-MISC, or that she reported the income she received for her services. (*See* DE1-11 (Plaintiffs' return).) Generally, no gain or loss is recognized on property transfers between spouses. *See* IRC § 1041. Accordingly, the court declines to allow the deduction.

d.      Phones

Plaintiffs claimed the following phone expenses for GTS: $1,470 for a landline, $4,196 for Steven's cell phone (one), and $1,131 for Heidi's cell phone (two). (DE8.) Plaintiffs' exhibits detail payments totaling $1,360 for the landline (PE528), $4,319.92 for Steven's cell phone (PE640), and $1,582.11 for Heidi's cell phone (PE645). Defendant disallowed the landline expenses because the first phone line is never deductible. (DE19.) Defendant disallowed Steven's cell phone expenses because he failed to provide and support a business use percentage. (DE18.) Defendant disallowed Heidi's cell phone expenses as personal. (*Id.*)

---

[17] Defendant cites *Embroidery Express, LLC v. Comm'r*, 112 TCM (CCH) 76 (2016) for the proposition that "[w]hen the amount deducted as wages involves a familial relationship, there must be a bona fide employer-employee relationship and whether there is a bona fide employer-employee relationship and whether the services were actually performed must be scrutinized." (Def's Tr Mem at 5.)

Plaintiffs maintain that both the landline and Steven's cell phone were used for business. Steven testified that he has had the same phone number since 1989, and the landline forwarded to his cell phone. Steven used his cell phone not only to receive calls but also to access maps when he was on the road. The court does not doubt those business uses of both the landline and Steven's cell phone. Nevertheless, no deduction is warranted here. Plaintiffs' landline is deemed personal under IRC section 262(b), which states that the first "telephone line provided to any residence of the taxpayer shall be treated as a personal expense." Plaintiffs provided no evidence that Steven's cell phone was a dedicated business line or that he maintained a separate line for personal use. Despite mixed use of Steven's cell phone, Plaintiffs made no allocation between business and personal use, instead deducting 100 percent of his cell phone expenses. Heidi's cell phone appeared to be primarily personal. Accordingly, the court finds no basis to allow Plaintiffs any telephone expenses.

e.     Dues and subscriptions

Plaintiffs claimed a deduction of $2,287 for dues and subscriptions. (DE8.) At audit and in this appeal, Plaintiffs provided receipts totaling $2,178 and Defendant allowed $1,350. (DE18, PE418.) Defendant disallowed personal items such as Spotify and Apple subscriptions, and unallocated items such as AAA and Costco memberships. (*Id.*) Plaintiffs claimed that the Costco membership was in the business name but provided no evidence to support that claim. (PE930.) Steven testified that he used the Costco membership to buy food to cook and eat while on the road. He also used AAA when on the road for work.

Plaintiffs failed to establish the business use, if any, of their subscriptions to Apple and Spotify. Plaintiffs' Costco membership appears to have been used to purchase food, which is generally not a business expense. *See Comm'r v. Moran*, 236 F2d 595, 597 (8th Cir 1956) ("A

personal expense exists when it is incurred by all people generally, regardless of occupation."). Although Steven likely used AAA while traveling for business, Plaintiffs made no allocation between business and personal use. Accordingly, no further deduction is allowed.

        f.      Miscellaneous expenses

Plaintiffs claimed $7,332 in miscellaneous expenses. (DE8.) At audit, Plaintiffs provided receipts totaling $5,752. (DE19.) Plaintiffs claimed $810 for a "Spencer Glacier Snowmobile Tour" and provided a receipt showing payment of $405. (*Id.*; PE444.) Plaintiffs explained that the "snowmobile rental was for transportation on the Kake Timber bid in Alaska." (PE930.) Plaintiffs also claimed $600 for payments to Alaska Trappers Association, which they described as a "junior sponsorship" advertising expense. (PE443, PE445, PE930.) The court finds Plaintiffs adequately explained the business purpose of those expenses.

Most of Plaintiffs' additional miscellaneous expenses were for their dogs. (PE443.[18]) Steven testified that he brought dogs with him to the woods for protection against both wildlife and people. (*See also* PE931 (discussing purpose of dogs for protection).) Plaintiffs had several dogs and rotated them on work trips because they got tired. (*See* PE443 (referencing four dogs).) Defendant disallowed the dog expenses as personal or, to the extent used for business, unallocated between business and personal use. (DE19.) The court agrees with Defendant. Pets are generally personal expenses. Plaintiffs offered no evidence that the dogs had special training such that they were suited to exclusive business use. It appears that the dogs lived at the family home and went on some, but not all work trips, in accordance with a rotation. The court accepts that the dogs were useful to Steven's business by providing protection in the woods, but the court

---

[18] One veterinary bill claimed for $758 was, apparently, for a cat. (PE443, PE459 (referencing "feline").) Plaintiffs did not explain the business purpose of that expense.

is not persuaded that the dogs were used 100 percent for business. Plaintiffs failed to allocate their dog expenses and offered no evidence to support a reasonable allocation.

Plaintiffs are allowed additional miscellaneous expenses of $1,005 for the snowmobile rental and advertising in Alaska. The remaining balance of miscellaneous expenses is denied.

## III. CONCLUSION

Upon careful consideration, the court finds the following adjustments should be made to Plaintiffs' 2019 taxable income: $3,099 of additional other income removed; $14,303 of contract labor expenses allowed; $3,722 of vehicle expenses allowed; $557 of depreciation expenses allowed; and $1,005 of miscellaneous expenses allowed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal for the 2019 tax year is granted in part and denied in part.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on April 25, 2025.*